The decision below is hereby signed.  Dated: January
2, 2007.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                             )
                                  )
GREATER SOUTHEAST COMMUNITY       )    Case No. 02-02250
HOSPITAL CORP. I, *et al.*,       )    (Chapter 11)
                                  )    (Jointly Administered)
            Debtors.              )
_____ )
                                  )
SAM J. ALBERTS, TRUSTEE FOR       )
THE DCHC LIQUIDATING TRUST,       )
                                  )
            Plaintiff,            )
                                  )    Adversary Proceeding No.
            v.                    )    04-10366
                                  )
HCA INC., *et al.*,               )
                                  )
            Defendants.           )

<u>MEMORANDUM DECISION REGARDING MOTION FOR SUMMARY JUDGMENT</u>

HCA Inc. ("HCA") and Galen Hospital Illinois, Inc. ("GHI,"
and collectively the "Defendants") seek summary judgment against
the plaintiff Sam J. Alberts, trustee for the DCHC Liquidating
Trust (the "Trust"), with respect to Counts III and IV of his
Second Amended Complaint (D.E. No. 56, filed July 21, 2005) (the

"Complaint").[1]  In the Complaint, Alberts seeks to avoid and recover certain allegedly fraudulent transfers (the "Michael Reese Transfers") from Michael Reese Medical Center Corporation ("Michael Reese"), as well as other debtors in these jointly administered bankruptcy cases (collectively the "Debtors"), to the Defendants.  Alberts asserts that he is entitled to avoid and recover the Michael Reese Transfers under the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/1 et seq. (1990) (the "IUFTA"), pursuant to 11 U.S.C. § 544.

The Defendants argue that there is no genuine factual dispute that the Michael Reese Transfers were made in exchange for reasonably equivalent value, which Alberts must disprove to succeed under Counts III and IV of his complaint.  They seek summary judgment as a consequence.  For the reasons that follow, the court will grant in part and deny in part the Defendants' motion and grant summary judgment in favor of Alberts sua sponte on one discrete issue.

---

[1]  On August 29, 2006, Alberts requested leave to file a third amended complaint adding Western Plains Capital, Inc. ("Western") as a defendant and adding language regarding certain "Obligations" incurred by Michael Reese in connection with its allegedly fraudulent transfers.  The court granted this request in part by permitting Alberts to add Western as a defendant in a decision and accompanying order entered on October 12, 2006.  The balance of Alberts's request was resolved by a stipulation entered into between the parties on October 18, 2006.  HCA and GHI are the only party defendants seeking summary judgment in the instant motion, presumably because Western had not yet responded to the Third Amended Complaint by the date on which the motion was filed.

I

The following facts are undisputed.[2]  Michael Reese was
formed as a wholly-owned subsidiary of Doctors Community Hospital
Corporation ("DCHC"), a privately-held healthcare management
company organized under the laws of Delaware.  On July 8, 1998,
Michael Reese entered into an asset purchase agreement (the
"APA") with GHI, a corporate subsidiary of fellow defendant HCA,
for the purchase of Columbia Michael Reese Hospital and Medical
Center ("Michael Reese Hospital").  Also on July 8, 1998, Grant
Hospital Corporation, another subsidiary of DCHC, signed a
separate asset purchase agreement with Columbia Grant Hospital
Inc. for the purchase of Grant Hospital.  On November 9, 1998,
the parties signed the "Sixth Amendment" to the APA--the last
such document signed prior to the purchase of the hospital.  The
sale of both hospitals closed on November 12, 1998.

Michael Reese and its affiliated Debtors filed for chapter
11 relief on November 20, 2002.  After protracted proceedings
lasting almost 18 months, the Debtors achieved confirmation of
their second amended plan of reorganization (the "Plan") on April
5, 2004, and their operations were taken over by entities known
as the "Reorganized Debtors."  Section 6.6 of the Plan provides
for the creation of the Trust, which is charged with liquidating

---

[2]  The facts set forth above are deemed to be admitted
pursuant to this court's memorandum decision entered on December
6, 2006.

certain assets of the Debtors and distributing the proceeds to certain classes of creditors (including certain unsecured creditors).[3]  Among the assets transferred to the Trust were fraudulent conveyance and other actions authorized under chapter 5 of the Bankruptcy Code.

Alberts initiated the instant adversary proceeding on November 18, 2004.  After Alberts filed an amended complaint (while at the same time opposing the Defendants' motion to dismiss the original complaint),[4] the Defendants filed a second motion to dismiss.  The court denied the second motion to dismiss, but ordered Alberts to file a second amended complaint alleging facts that would justify his "lumping" together of the debtors in his complaint or specify which of the debtors consummated the allegedly fraudulent conveyance.

Alberts amended his complaint again on July 21, 2005, and moved for partial summary judgment on March 9, 2006.  The Defendants filed an initial opposition to this motion under Fed. R. Civ. P. 56(f) and then filed a supplemental opposition, which

---

[3] Section 6.6(a) of the Plan specifies that the Trust "shall be for the benefit of the holders of the NCFE Claim, Allowed General Unsecured Claims and Allowed Patient Refund Claims." Other creditors' claims were discharged by the Plan (e.g., if no timely claim was filed) or assumed by the Reorganized Debtors (as in the case of allowed medical malpractice claims).  (See generally Plan Art. IV).

[4]  The Defendants' motion to dismiss the original complaint was denied without prejudice in an order entered March 31, 2005.

4

Alberts moved to strike.[5]

The parties appeared before the court on April 4, 2006, for a hearing on Alberts's motion for partial summary judgment, at which time the court ruled from the bench that the motion should be granted in part and denied in part. The court subsequently entered an order reciting that Michael Reese transferred $66,048,840.00 towards the purchase of Michael Reese Hospital.[6]

Alberts filed a motion for partial summary judgment on July 27, 2006, on the discrete issue of whether the Complaint is barred by the IUFTA's statute of repose. See 740 Ill. Comp. Stat. § 160/10(a). The Defendants responded by filing both an opposition and a cross-motion for summary judgment. The Defendants filed the instant motion while those motions were still pending before the court. On December 6, 2006, the court entered a memorandum decision and accompanying order resolving in part the motion for partial summary judgment filed by Alberts and the cross-motion for summary judgment filed by the Defendants. Alberts v. HCA Inc. (In re Greater Southeast Cmty. Hosp. Corp. I), slip op. (Bankr. D.D.C. Dec. 6, 2006), available at 2006 WL

---

[5]   The court ultimately denied Alberts's motion to strike, but did award him attorneys' fees and costs for expenses incurred in drafting and prosecuting the motion.

[6]   The court did not determine whether additional transfers totaling $5,571,381.00 were made as alleged by Alberts. (Order at 2 (D.E. No. 155, entered June 2, 2006)). The existence of those transfers is one of the issues before the court as part of the instant motion.

3519298 ("HCA I").  The balance of those motions will be decided
based upon the parties' responses to an order to show cause also
entered by the court on December 6, 2006.

II

Pursuant to Fed. R. Civ. P. 56 (as incorporated by Fed. R.
Bankr. P. 7056), summary judgment will be granted where "there is
no genuine issue as to the material fact and the . . . moving
party is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56©.  The court must deny summary judgment where there is a
genuine issue as to any material fact.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 247 (1986).  If the movant makes a
properly supported motion, the burden shifts to the opposing
party to demonstrate specific facts showing that there is a
genuine issue for trial.  Id.

If the moving party does not bear the burden of proof at
trial on an issue, summary judgment may be granted if the moving
party shows "that there is an absence of evidence to support the
nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317,
325 (1986).  When a movant points to such a lack of evidence, the
non-moving party must come forward with evidence that supports
its case.  Id.  The court must view the opposing party's evidence
in the light most favorable to non-movant's position and draw
inferences in favor of that party, provided such inferences are
justifiable or reasonable.  Matsushita Elec. Indus. Co., Inc. v.

6

Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

The only issue presented by the instant motion is whether Michael Reese received reasonably equivalent value as contemplated by the IUFTA for its transfers to the Defendants. "What constitutes 'reasonably equivalent value' for purposes of the [IUFTA] has not been defined by Illinois case law," Helms v. Roti (In re Roti), 271 B.R. 281, 303 (Bankr. N.D. Ill. 2002). Consequently, "[r]easonably equivalent value is interpreted the same way under both [11 U.S.C.] § 548 and the [IUFTA] because the term, as used in the [IUFTA], is derived from § 548(a)(2)." Official Comm. of Unsecured Creditors of Crystal Med. Products, Inc. v. Pedersen & Houpt (In re Crystal Med. Products, Inc.), 240 B.R. 290, 300 (Bankr. N.D. Ill. 1990).

"The test used to determine reasonably equivalent value in the context of a fraudulent conveyance [as contemplated by § 548] requires the court to determine the value of what was transferred and to compare it to what was received." Barber v. Golden Seed Co., Inc., 129 F.3d 382, 387 (7th Cir. 1997). In addition to comparing the fair market value of the challenged transfer against the fair market value of the consideration received in exchange for the transfer, courts determine whether these values are reasonably equivalent by looking for "the existence of an arm's-length relationship between the debtor and the transferee" and good faith on the part of the transferee. Mellon Bank, N.A.

7

v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.), 92
F.3d 139, 149 (3d Cir. 1996).   The issue "must be evaluated as of
the date of the transaction."   Daley v. Chang (In re Joy Recovery
Tech. Corp.), 286 B.R. 54, 75 (Bankr. N.D. Ill. 2002).[7]

A.   Value of the Michael Reese Transfers

The court fixed in part the value of the Michael Reese
Transfers in its June 2, 2006 order.   In that order, the court
ruled that there was no genuine dispute of material fact that
Alberts transferred $66,048,840.00 of the $71,620,221.00 listed
as the closing price for the purchase of Michael Reese Hospital.
(Order at 2).   The court reserved judgment on the balance of the
closing price--$2,000,000.00 allegedly paid by Michael Reese in
consideration for the delay in the closing date, and
$3,571,381.00 allegedly paid in connection with certain Medicare
receivables--for trial.   (Order at 2).

Notwithstanding the court's prior order, the Defendants not
only seek summary judgment with respect to the transferred
amounts not decided in the court's June 2, 2006 order, but also
seek to re-argue the value of the other transfers made by

---

[7] Alberts argues that the arm's-length nature of the
parties' transaction is immaterial or, at most, minimally
relevant in considering whether Michael Reese received reasonably
equivalent value for the Michael Reese Transfers.   (Pl. Opp'n
¶¶ 55, 57 (D.E. No. 315, filed November 27, 2006)).   The court
agrees that this fact is not dispositive by itself, but it is one
factor to be considered in assessing the totality of the
circumstances surrounding the transaction in question.

Alberts.  The court considers their arguments first with respect
to the value of the transfers already decided by the court, and
then with respect to the value of the transfers yet to be
decided.

    1.  <u>Law of the case</u>

The Defendants argue that "the parties and the [c]ourt agree
that [Michael] Reese Corporation transferred to defendant GHI <u>no
more</u> than the $71,620,221 purchase price set forth on the Michael
Reese Hospital Closing Statement, dated November 12, 1998."
(Def. Mem. at 8 (D.E. No. 263, filed November 6, 2006)) (emphasis
added).  As the Defendants are fully aware, the court did not
rule only that the purchase price set forth in the November 12,
1998 closing statement was the uppermost limit for the value of
the Michael Reese Transfers.  Rather, it concluded that with the
exception of the amounts explicitly carved out of the purchase
price by the court (<u>i.e.</u>, the $2,000,000.00 allegedly paid in
consideration for the delay in closing and the $3,571,381.00
allegedly paid in connection with Medicare receivables), that
purchase price constituted the actual value of the transfers.

Blithely ignoring the court's June 2, 2006 order, the
Defendants now seek to carve out additional items from the
purchase price.  The court's ruling is clear from both the June
2, 2006 order and the court's oral decision announced from the
bench on April 4, 2006.  The June 2, 2006 order states:

    1.    Plaintiff is entitled to judgment as a
matter of law on the following issues:

. . .

    b.    GHI received the following transfers
for the purposes of Bankruptcy Code
sections 544 and 550 and applicable
state law: <u>$66,048,840.00</u>, which
amount comprises a $71,620,221.00
purchase price provided under a
certain Closing Statement dated
November 12, 1998, less the
following amounts still in dispute:
(I) $2,000,000 relating to an
alleged delay in the sale closing
date, and (ii) $3,571,381.00 related
to certain Medicare receivables.

(Order at 2) (emphasis added).  The court's oral decision was

equally specific and unambiguous:

The [c]ourt will grant in part the
Trustee/Plaintiff's motion for partial
summary judgment and deny that motion in
part.

The Trustee seeks partial summary judgment as
to four elements of his claim that there was
a fraudulent conveyance in this case.  The
first element is that there was a transfer in
exchange for the purchase by the Debtor,
Michael Reese . . ., of $72,198,693.22, in
exchange for the purchase of Michael Reese
Hospital and related assets.  <u>The court will
grant the Trustee partial summary judgment as
to part of that $72 million</u>.

. . .

There is a genuine dispute regarding whether
that purchase price [<u>i.e.</u>, the $72,198,693.22
set forth above] ought to be reduced with
respect to certain Medicare receivables that
had belonged to the seller, one of the
Defendants in this proceeding, Galen Hospital
Illinois, Inc. . . . The question is whether

10

the purchase price ought to be reduced to
reflect that one of the credits towards the
purchase price listed on the closing
statement was the $3,571,281.00 amount of
Medicare receivables for which Michael Reese
was acting as Galen's collection
agent. . . . <u>[T]he court agrees with the
Defendants that the $71,620,221.00 purchase
price ought to be reduced by $3,571,281.00 in
granting partial summary judgment to the
Trustee as to what the Trustee has
successfully showed was transferred</u>.

. . .

The third issue, third item, was a $2 million
item for a delay in closing. . . . I don't
think the record is sufficiently developed
for the [c]ourt to feel fully confident that
this $2 million for the delay in closing
should be treated as an element of a transfer
by Michael Reese for the assets it was
acquiring as opposed to simply consideration
for the delay in closing the
transaction. . . . So I'll deny it without
prejudice to renewal.  Deny motion for
partial summary judgment <u>as to that portion</u>
of the purchase price, without prejudice to
renewal.

So those are the <u>adjustments</u> to the purchase
price and how the [c]ourt resolves them.

(Apr. 4, 2006 Hr'g Tr. at 138:4-15, 19-23, 139:2-7, 18-22, 143:5-

6, 18-23, 144:1-5 (D.E. No. 145, filed May 12, 2006)) (emphasis

added).

    The court further clarified the nature of its ruling in a

later colloquy with counsel for both sides and Alberts himself:

        MR. LAU:   Could you clarify?  We don't quite
        understand how you want that adjusted, Your
        Honor.

        THE COURT:   <u>Well, I'm going to grant partial</u>

11

<u>summary judgment that there was a transfer of
[$]71,620,221 less the amount that was
charged for the delay in closing</u>.

MR. ALBERTS:    But that issue hasn't been
dispositively decided in their favor.  It's
just an issue--

THE COURT:    You're not being granted partial
summary judgment on it.

MR. ALBERTS:    On that point.  It's not that
they're being granted summary judgment on
that point.

THE COURT:    No, I haven't granted them
summary judgment on that.

. . .

MR. KILDUFF:    Your Honor, what do you want
to do with the Medicare receivables issue?
I'm not sure where that falls in the proposed
order.  That's the 3.6 and the working
capital issue.

THE COURT:    Oh, yes.  That's another
adjustment to the purchase price.  I'm sorry.
You're right.  I just was forgetting it.  I
overlooked it.  <u>So that's another reduction
to the purchase price that the Plaintiff is
not entitled to partial summary judgment on
at this stage</u>.

(Apr. 4, 2006 Hr'g Tr. at 157:5-17, 158:13-21) (emphasis added).

When a court grants summary judgment on a particular factual

issue, its ruling constitutes the law of the case with respect to

that issue.  <u>See</u> <u>Thorne v. Alexander</u>, 782 F. Supp. 677, 681

(D.D.C. 1992) (refusing to "tolerate any attempts to relitigate

allegations" already decided in prior motion for summary

judgment).  "Under this doctrine, when the same issue is

presented to the same court, in the same case, the results should be the same." <u>Feirson v. District of Columbia</u>, 362 F. Supp. 2d 244, 247 (D.D.C. 2005). "The law of the case applies even to a non-final, non-appealable decision; it seeks 'to minimize expenditure of judicial resources and energy on matters already decided,' and is triggered by a final decision on a particular issue." <u>United States ex rel. Poque v. Diabetes Treatment Centers of Am., Inc.</u>, 238 F. Supp. 2d 258, 262 (D.D.C. 2002) (quoting <u>United States v. Eilberg</u>, 553 F. Supp. 1, 4 (D.D.C. 1981)).[8]

The court's oral decision rendered on April 4, 2006, and the order memorializing that decision entered on June 2, 2006, established the minimum value of the Michael Reese Transfers as $66,048,840.00. To the extent that the Defendants disagreed with that holding, they could have (1) filed a motion for leave to file interlocutory appeal, (2) filed a motion for reconsideration

---

[8] "Reconsideration of the law of the case is appropriate where there are 'unusual' circumstances, 'extraordinary' circumstances, 'exceptional' circumstances, to prevent a 'grave injustice,' and the like." <u>Poque</u>, 238 F. Supp. 2d at 262. Needless to say, the Defendants have not suggested that there are any "extraordinary" or "exceptional" circumstances present with respect to this issue.

with this court,[9] or (3) requested reconsideration of the court's

prior order as part of the instant motion.  The one thing that

they should not have done is the exact thing that they did:

namely, pretend that the June 2, 2006 order says something that

it does not and ignore the court's rulings from the bench on

April 4, 2006.  Summary judgment with respect to the minimum

value of the Michael Reese Transfers is denied based on the law

of the case as set forth in the court's April 4, 2006 oral

decision and June 2, 2006 order.[10]

---

[9]  The only novel argument raised by the Defendants in
connection with the value of the Michael Reese Transfers is their
argument that DCHC re-allocated a portion of the closing price
for the purchase of Grant Hospital to the closing price on the
purchase of Michael Reese Hospital for unknown reasons.  (Def.
Mem. at 9-11).  Theoretically, the Defendants could still file a
motion for partial reconsideration with respect to that argument
(an argument that could lead to a $5,000,000.00 deduction from
the value ascribed to the Michael Reese Transfers), but they
would need to demonstrate that (1) the evidence in support of
this argument was not available to the Defendants when the court
issued its oral decision and entered the order memorializing that
decision, and (2) there is good cause for the apparent seven-
month delay in the presentation of that evidence to the court.

[10]  The closest that the Defendants come to actually
addressing the court's April 4, 2006 oral decision and June 2,
2006 order is when they argue that the value of the Michael Reese
Transfers should be reduced by a subsequent refund sent to
Michael Reese based on an accounting reconciliation performed by
PriceWaterhouseCoopers pursuant to §§ 2.07 and 2.08 of the APA
(the "Final Purchase Price Adjustment").  In raising this
argument, the Defendants acknowledge that the court previously
held that the Final Purchase Price Adjustment could not be
included in assessing the value of the Michael Reese Transfers.
(Def. Mem. at 13).  The court's ruling that the Final Purchase
Price Adjustment should not be included in assessing the value of
the Michael Reese Transfers is law of the case and, more
importantly, remains the right conclusion in this court's view.

14

---

Upon further review, however, the court has serious doubts as to whether the Final Purchase Price Adjustment should be an issue reserved for damages as stated in the court's decision. (Apr. 4, 2006 Hr'g Tr. at 141:5-142:2).  As the court observed earlier in that same decision:

> It seems to me what this [i.e., the Final Purchase Price Adjustment] really can be viewed as is an element of what the Michael Reese entity was purchasing when it went to closing.  It was purchasing the right to have a refund of the purchase price to the extent that there was this later audit to determine what adjustments ought to be made in light of better information at a later date.  This goes to the valuation question of what the [d]ebtor Michael Reese received, namely, an obligation for the seller to make a payment back to Michael Reese to the extent that a fuller evaluation of what was being exchanged permitted an adjustment of the purchase price.

(Apr. 4, 2006 Hr'g Tr. at 141:15-25).

If the court does not consider the Final Purchase Price Adjustment as part of the value transferred to Michael Reese, it may conclude that the discrepancy between the value transferred by Michael Reese and the value received by Michael Reese is so large that the exchange was not for reasonably equivalent value when the court would have found the discrepancy so small as to be a reasonable exchange of value if the Final Purchase Price Adjustment had been included.  Even if the Final Purchase Price Adjustment is applied to the final damages calculation, Alberts would benefit in that scenario because he would recover a reduced amount of damages where he would have recovered nothing had the court considered the adjustment in its initial determination of reasonably equivalent value.

Through no fault of their own, the parties have not framed this specific issue in a manner that would permit the court to decide it one way or the other on the papers before it.  Instead, the court will consider the issue at the hearing on any unresolved portions of this motion currently scheduled for January 4, 2006.  The parties should be prepared to address whether the Final Purchase Price Adjustment is a component of the value received by Michael Reese or a matter to be reserved for the damages portion of trial at that time.

15

2.  <u>Alleged extension fee</u>

In its prior oral decision, the court opined that it did not
believe that the record was "sufficiently developed for the
[c]ourt to feel fully confident that" $2,000,000.00 transferred
by Michael Reese was "an element of a transfer by Michael Reese
for the assets it was acquiring as opposed to simply
consideration for the delay in closing the transaction." (Apr.
4, 2006 Hr'g Tr. at 143:18-23). This analysis requires some
refinement. There is no question that Michael Reese transferred
$2,000,000.00 to the Defendants on the closing date. The only
question is whether Michael Reese received reasonably equivalent
value in exchange for that transferred amount. Consequently, the
court will grant summary judgment to Alberts <u>sua</u> <u>sponte</u> on the
limited factual issue of whether Michael Reese transferred
$2,000,000.00 to the Defendants.

The question of reasonably equivalent value is a more
difficult one. The Defendants have produced extrinsic evidence
in the form of a witness declaration and deposition testimony
that the $2,000,000.00 transfer was made in exchange for an
extension of the closing date on the purchase of Michael Reese
Hospital. (Gerken Decl. ¶ 11 (D.E. No. 130, filed April 3,
2006); Kilduff Decl. Exs. H, Q, S, U-V (D.E. Nos. 265-67, filed
November 7, 2006)). Alberts argues that this evidence cannot be
considered under the parol evidence rule, and submits that the

16

APA itself does not mention any additional consideration received by Michael Reese in the form of closing extensions. (Pl. Opp'n ¶ 24).

Even if Alberts is right and the parol evidence rule applies in this case,[11] he will still need to demonstrate that the other assets transferred by the Defendants to Michael Reese were not reasonably equivalent to the value transferred by Michael Reese (_i.e._, the $66,048,840.00 in transfers established in the court's June 2, 2006 order and the $2,000,000.00 at issue here). Alberts has not requested summary judgment on this point, let alone demonstrated that such relief is warranted.

By the same token, the evidence submitted by the Defendants (if admissible) establishes only that additional consideration was provided to Michael Reese for the $2,000,000.00 transfer, not that the additional consideration constitutes reasonably equivalent value. If Alberts can establish that the rest of the assets transferred to Michael Reese were not reasonably equivalent in value to the $66,048,840.00 transferred by Michael Reese (_i.e._, the transferred amounts less the $2,000,000.00 at issue here), it stands to reason that the value of any extension of time in which to close on that lopsided deal would not be reasonably equivalent in value to the additional $2,000,000.00

---

[11] Alberts has filed a motion _in limine_ seeking to exclude certain parol evidence produced by the Defendants. The court will decide that motion in a separate memorandum decision.

17

transferred by Michael Reese on November 12, 1998.  In short, the issue cannot be resolved on a motion for summary judgment.

3.   Medicare receivables

The Sixth Amendment to the APA inserted a new section in the APA ("§ 2.09A") entitled "Collection Procedures for Medicare Patient Receivables."  (Alberts Decl. at Ex. 16).  That section states in pertinent part:

> Seller [i.e., GHI] hereby appoints Buyer [i.e., Michael Reese], and Buyer agrees to act, as Seller's collection agent with respect to the Medicare Patient Receivables relating to the rendering of services and provision of medicine, drugs and supplies by Seller ("Medicare Transition Services") to patients admitted to the Hospital [i.e., Michael Reese Hospital] on or before the Closing Date including patients who are not discharged until after the Closing ("Medicare Transition Patients").
>
> At the date which is one hundred and eighty (180) days from the Closing Date, Seller shall calculate the amount of cash receipts from Medicare Patient Receivables actually received by Seller.  If such cash receipts, as finally determined, is not an amount which is at least equivalent to the amount of Medicare Patient Receivables calculated in accordance with this Section 2.09A at the time the Closing Balance Sheet is delivered (the "Collection Incentive Amount"), then Buyer shall remit the difference between the amount of the Collection Incentive Amount and the actual amount of cash receipts from Medicare Patient Receivables actually received by Seller (the ["]Collection Shortfall Amount").  Buyer shall remit the Collection Shortfall Amount, if any, within ten (10) days of receipt of Seller's calculation thereof.

(Alberts Decl. at Ex. 16).

18

In other words, the Sixth Amendment provides that GHI would
retain ownership over Medicare receivables relating to patients
admitted or otherwise assisted prior to Michael Reese's takeover
of Michael Reese Hospital, and that Michael Reese would (1)
collect those receivables on GHI's behalf and (2) make up the
difference for any shortfall between the receivables expected by
GHI (the "Collection Incentive Amount") and the receivables
actually collected by Michael Reese. The parties agree that the
Collection Incentive Amount corresponds to an amount totaling
$3,571,281.00 that was deducted from the purchase price of
Michael Reese Hospital as reflected by the closing statement for
that transaction (the "Michael Reese Closing Statement").
(Alberts Decl. at Ex. 10).

Without question, Michael Reese incurred separate
obligations within the meaning of § 5 of the IUFTA when it agreed
to collect accounts receivables on GHI's behalf and when it
agreed to satisfy any difference between the anticipated accounts
receivables and the amounts collected by Michael Reese. See 740
Ill. Comp. Stat. 160/5(a) (providing for avoidance of
"obligation[s] incurred"). But the value of these obligations is
unknown. There is no evidence in the record that Michael Reese
actually paid anything to GHI to make up for a Collection
Shortfall Amount, nor is there any evidence in the record from
which the court can ascertain how much it cost Michael Reese to

collect accounts receivables on GHI's behalf.

Had the Defendants argued that there is no such evidence in the record, Alberts, as the party with the burden of proof on this issue, would have been obligated to produce some evidence demonstrating that the obligations incurred by Michael Reese pursuant to § 2.09A held some value. <u>Celotex</u>, 477 U.S. at 325. His failure to provide such evidence would have been fatal. But the Defendants argue only that Alberts did not incur any obligations with respect to Medicare receivables, not that those obligations lacked value. (Def. Mem. at 12).

The court has previously declined to grant summary judgment in the Defendants' favor when the court has identified a deficiency in the record that was not brought to Alberts's attention in the Defendants' memoranda of law or by the court itself. <u>See</u> <u>HCA I</u>, slip op. at 38-39. Consistent with that approach, the court cannot grant the Defendants summary judgment with respect to the value of the obligations incurred by Michael Reese relating to the accounts receivables owned by GHI. But the court sees no worth in permitting this issue to go to trial if there is no evidence for Alberts to present. Accordingly, the court will enter a separate order directing Alberts to show cause why summary judgment ought not be granted to the Defendants on this issue unless he submits evidence demonstrating that the obligations incurred by Michael Reese pursuant to the Sixth

20

Amended had some value by January 16, 2006.  If they deem it
appropriate, the Defendants may file a memorandum in reply to
Alberts's response at any time prior to the commencement of
trial.

    B.   <u>Value Received by Michael Reese</u>

    The Defendants have produced evidence tending to show that
the assets transferred to Michael Reese by GHI (namely, Michael
Reese Hospital along with its equipment and net working capital)
were at least equal in value to the Michael Reese Transfers.
(Kilduff Decl. at Exs. C-G, I, S, Q, AE).[12]  Alberts has produced
evidence to the contrary.  (Demchick Decl. at Ex. A (D.E. No.
316, filed November 27, 2006); Alberts Decl. at Exs. 24-31, 36).
Consequently, the Defendants seek to winnow the record before the
court by arguing that the valuation of Michael Reese Hospital's
property, equipment, and net working capital conducted by Neil
Demchick is an impermissible exercise in "hindsight" analysis,
(Def. Mem. at 20-24), and that many of the other exhibits
attached to Alberts's declaration concerning the value of these
assets are unauthenticated and/or hearsay evidence.  (Def. Reply
at 37, Kilduff Decl. at Ex. V (D.E. No. 359, filed December 14,
2006)).  The Defendants also seek summary judgment on the factual

---

    [12]  The Defendants also cite to portions of a transcript of
a deposition taken of former DCHC employee Laurie Taylor and
documents bearing the Bates labels EY-000836 and EY-000837, but
the court was unable to locate these items in the record created
by the parties.

issue of whether Michael Reese assumed a managed care contract

with Humana (the "Humana Contract") that resulted in a liability

of $24,677,570.00 for Michael Reese.  (Def. Mem. at 24-29; Def.

Reply at 3-25).

    1.   <u>Value of assets transferred by GHI</u>

    The court agrees with the Defendants that "in the analysis

of reasonably equivalent value it is necessary to keep in mind

that 'reasonably equivalent value is a question of fact that must

be evaluated as of the date of the transaction.'" <u>Creditor's</u>

<u>Comm. of Jumer's Castle Lodge, Inc. v. Jumer (In re Jumer's</u>

<u>Castle Lodge, Inc.)</u>, 329 B.R. 837, 845 (Bankr. C.D. Ill. 2005)

(quoting <u>In re Joy Recovery Tech. Corp.</u>, 286 B.R. at 75).  But

that does not mean that the evaluation itself must have taken

place at the time of the transfer.  <u>See, e.g.</u>, <u>Sharp v. Chase</u>

<u>Manhattan Bank USA, N.A. (In re Commercial Fin. Services, Inc.)</u>,

350 B.R. 559, 585-86 (Bankr. N.D. Okla. 2005) (refusing to

exclude expert testimony rendered years after challenged

transaction); <u>Hirsch v. Steinberg (In re Colonial Realty Co.)</u>,

226 B.R. 513, 523 (Bankr. D. Conn. 1998) (crediting expert's

valuation report rendered years after fraudulent transfer).

    Demchick's expert report renders an opinion with respect to

the value of Michael Reese Hospital at the time of the Michael

Reese Transfers, not the value of the hospital now.  (Demchick

Decl. ¶ 13, Ex. A).  Nevertheless, the court cannot make any

rulings with respect to the value of the assets transferred by GHI because the Defendants have filed a separate motion to strike Demchick's declaration on the ground that it relies heavily on other declarations that are inadmissible.[13]  If the court grants the motion to strike Demchick's declaration, the only evidence in the record supporting Alberts's view of the assets transferred by GHI would be the exhibits subject to the Defendants' evidentiary objections.[14]

On the other hand, those objections will be rendered moot if the Demchick declaration is not stricken because that declaration is enough by itself to create a genuine issue of material fact

---

[13]  It is unclear whether the Defendants seek to strike the Demchick declaration in toto or only insofar as that declaration concerns the Humana Contract.  Because of that ambiguity, the court will defer ruling on the discrete factual issue of the value of the assets transferred by GHI until it resolves the motion to strike, but the Defendants will need to clarify whether and why the Demchick declaration should be stricken in its entirety at the hearing on their motion to strike currently scheduled for January 4, 2006.

[14]  Exhibits 24 and 31 to the Alberts declaration are not subject to the Defendants' evidentiary objections, but these exhibits do not create a genuine dispute of material fact with respect to the value of the assets transferred by GHI, either.

with respect to the value of the assets transferred by GHI.[15]
The court declines to render what could turn out to be an
advisory opinion on the myriad evidentiary objections raised by
the Defendants with respect to the exhibits attached to the
Alberts declaration.  The court will defer consideration of this
issue until it resolves the Defendants' motion to strike.

2.   <u>Liability arising from the Humana Contract</u>

The Defendants also seek to strike declarations filed by
DCHC Vice-Presidents Donna Talbot and Erich Mounce that support
Demchick's conclusion that Michael Reese assumed GHI's liability
on the Humana Contract.  Even if the court were to discount this
evidence, there is still some evidence in the record suggesting
that Michael Reese assumed the Humana Contract, albeit at a
slightly lesser cost of $24,369,100.00 (as opposed to the
$24,677,570.00 estimate made by Demchick).  (Alberts Decl. at
Exs. 5, 9).  Although this evidence, which consists of deposition

---

[15] Demchick's declaration creates a genuine dispute of
material fact with respect to the value of the assets transferred
by GHI even if the court grants the Defendants summary judgment
with respect to the factual issue of whether Michael Reese
assumed the Humana Contract at a loss of $24,677,570.00.  Even by
the Defendants' reckoning, Demchick values the assets transferred
by GHI at $48,428,754.00 without accounting for the liability
incurred in connection with the Humana Contract.  (Def. Mem. at
24).  That valuation, if construed as accurate, would result in a
net loss of $17,620,086.00 or $19,620,086.00 (depending on
whether the court considers the $2,000,000.00 allegedly
transferred by Michael Reese in exchange for their delay in
closing), or 26.67% or 29.71% of the purchase price for Michael
Reese Hospital.  An exchange of value that one-sided can hardly
be deemed "reasonable."

testimony from Mounce and Talbot, is far from dispositive,[16] it

is enough to defeat the Defendants' motion for summary

judgment.[17]

---

[16] The Defendants argue that the deposition testimony of
Mounce and Talbot supports their alternative theory that Michael
Reese terminated its contract with Humana shortly after it
acquired Michael Reese Hospital.  (Def. Reply at 5-6 (D.E. No.
353, filed December 13, 2006)).  The court does not necessarily
disagree with this analysis, but the questions of whether an
assumed contract that is subsequently terminated constitutes a
liability as of the date of valuation and how one determines the
scope of liability in such circumstances is a mixed question of
expert methodology and law that is better left for determination
at trial, not on a motion for summary judgment.  The Defendants'
argument that Demchick's expert analysis is inadmissible because
his analysis does not conform to the applicable Statement of
Financial Accounting Standards fails for the same reason.  (Def.
Mem. at 25; Def. Reply at 14-17).  The court will adjudicate the
"battle of experts" between the parties regarding proper
accounting methodologies, which present a genuine dispute of
material fact, at trial.
    The court does not mean to suggest that the factual issue of
whether Michael Reese terminated the Humana Contract is or could
be irrelevant to the parties' dispute.  It may well be the case
that Demchick's methodology in estimating the liability on the
Humana Contract is correct, but that the damages sought by
Alberts on that liability will be lessened by the termination of
that contract.  Insofar as the instant motion is concerned,
however, the deposition testimony of Mounce and Talbot in
particular suffices to carry the day for Alberts.

[17] Because the Defendants are not entitled to summary
judgment with respect to the factual issue of whether Michael
Reese assumed the Humana Contract even if their motion to strike
is granted, the court will deny their motion to strike as moot
insofar as it seeks to strike the Mounce and Talbot declarations.
It will not deny the motion to strike as moot with respect to the
Demchick declaration because that declaration is relevant in
other ways to the instant motion, see part II.B.1, supra, and
because Demchick calculates the liability incurred on the Humana
Contract as being some $308,470.00 more than the liability set
forth in the Talbot declaration.

C.   Other Factors

There is no evidence in the record created in connection with the instant motion that the Defendants acted in bad faith in entering into the APA with Michael Reese.[18]   Nevertheless, the court cannot award summary judgment to the Defendants with respect to the issue of good faith because Alberts has produced evidence in connection with a separate motion for summary judgment filed by Western that appears to demonstrate that Carl V. George, an officer for all three defendants, knew that Michael Reese's corporate parent DCHC was in financial distress.   (Pl. Corrected Opp'n ¶¶ 30-32 (D.E. No. 378, filed December 20, 2006); Alberts Decl. at Ex. 4 (D.E. No. 380, filed December 20, 2006).

---

[18]   The only evidence Alberts points to in his opposition as suggesting bad faith on the part of the Defendants is (1) the Michael Reese Closing Statement, which, according to Alberts, establishes that the Defendants knew that Michael Reese borrowed more money from its lenders to purchase Michael Reese Hospital's accounts receivables than the receivables were worth, (Pl. Opp'n ¶¶ 51-52; Alberts Decl. at Ex. 10), and (2) a newspaper article chronicling the financial woes of DCHC, the parent company of Michael Reese that purportedly was sent to in-house counsel for HCA.   (Pl. Opp'n ¶ 53; Alberts Decl. at Ex. 20).   The former piece of "evidence" is persuasive only if the court assumes the very thing that Alberts must prove (i.e., that Michael Reese did not receive reasonably equivalent value for the Michael Reese Transfers).   The latter argument is sound in theory but unsupported by the record, which reveals only that someone named "David Hill" at "Columbia/HCA Healthcare Corporation" received a copy of the article in question.   Without some testimonial or documentary evidence demonstrating that Hill was (1) an agent of one or more of the Defendants that (2) was acting within the scope of his authority when he received the article, there is no basis for imputing knowledge of the article to the Defendants. Etshokin v. Texasgulf, Inc., 612 F. Supp. 1212, 1217-18 (N.D. Ill. 1984).

26

Alberts contends in both motions that the Defendants could
not have acted in good faith in entering into the APA if they
knew or should have known that Michael Reese was insolvent when
it entered into the APA.  (Pl. Opp'n ¶¶ 49-53; Pl. Corrected
Opp'n ¶¶ 34-37).  While the court is skeptical as to whether the
case law cited by Alberts, which pertains to the "good faith"
defense under 11 U.S.C. § 550, should apply with equal force to
the totality of the circumstances inquiry demanded by the IUFTA,
it will not rule on this issue if there is no evidence to support
Alberts's contention.  The court will therefore reserve judgment
on this issue until it has completed a more thorough
investigation of the record presented in connection with the
motion for summary judgment filed by Western and given the
parties an opportunity to articulate their positions with respect
to the legal issue of whether a transferee that knows or should
have known of a transferor's insolvency can receive the disputed
transfer in good faith.

Finally, there is no evidence in the record that the APA, as
amended on November 9, 1998, was the result of anything other
than an arm's-length negotiation between the parties.  The court
will therefore grant summary judgment to the Defendants with

27

respect to that factual issue.[19]

                              III

        For the reasons set forth above, the court will grant

summary judgment to the Defendants with respect to the factual

issue of whether the Defendants the APA, as amended on November

9, 1998, was the result of arm's-length negotiations between the

parties.  It will defer ruling on the factual issues of (1) the

value of the assets transferred by GHI and (2) whether the

Defendants entered into the APA in good faith until the court

rules with respect to the separate motion to strike filed by the

Defendants and the separate motion for summary judgment filed by

Western.  It will deny the instant motion in all other respects.

        The court will also enter a separate order directing Alberts

to show cause why summary judgment ought not be granted in favor

of the Defendants sua sponte on the factual issue of whether the

obligations incurred by Michael Reese pursuant to the Sixth

Amendment to the APA had any value unless Alberts submits

evidence demonstrating that the obligations had some value by

January 16, 2007.  It will enter yet another order denying in

---

        [19] Alberts suggests that the APA was not negotiated at
arm's length because National Century Financial Enterprises, the
primary if not sole lender to DCHC and Michael Reese, placed
considerable pressure on Michael Reese to purchase Michael Reese
Hospital, (Pl. Opp'n ¶ 56), but the arm's-length separation
required here is between the transferor (Michael Reese) and the
transferee (the Defendants), not the transferor and the
transferor's lender.  In re R.M.L., Inc., 92 F.3d at 148-49.

                              28

part the motion to strike filed by the Defendants as moot.

Finally, the court will grant summary judgment to Alberts <u>sua</u>

<u>sponte</u> with respect to the factual issue of whether Michael Reese

transferred $2,000,000.00 to the Defendants in addition to the

$66,048,840.00 identified by the court in its April 4, 2006 oral

decision and June 2, 2006 order.

 Separate orders follow.

        [Signed and dated above.]

Copies to:

Lucius B. Lau       Jeffrey W. Kilduff
Jeffrey E. Schmitt     Lani R. Miller
White & Case LLP     Stephen D. Brody
701 Thirteenth Street, N.W. O'Melveny & Myers LLP
Washington, DC 20005   1625 Eye Street, NW
Counsel for the plaintiff  Washington, DC 20006
             Counsel for the defendants
             HCA Inc. and
             Galen Hospital Illinois, Inc.