The decision below is hereby signed.  Dated: January 2, 2007.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GREATER SOUTHEAST COMMUNITY | ) | Case No. 02-02250 |
| HOSPITAL CORP. I, *et al.*, | ) | (Chapter 11) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| SAM J. ALBERTS, TRUSTEE FOR | ) | |
| THE DCHC LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 04-10366 |
| | ) | |
| HCA INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM DECISION REGARDING PLAINTIFF'S MOTIONS IN LIMINE</u>

In three separate motions, the plaintiff Sam J. Alberts, trustee for the DCHC Liquidating Trust (the "Trust"), seeks to exclude the following evidence proffered by the defendants HCA Inc. ("HCA") and Galen Hospital Illinois, Inc. ("GHI," and collectively the "Defendants") for use at trial: (1) any parol evidence relating to the asset purchase agreement (the "APA") entered into by Michael Reese Medical Center Corporation

("Michael Reese") and GHI on July 8, 1998, (2), the reports and testimony of Matthew Kimmel, an expert witness scheduled to testify on behalf of the Defendants, and (3) certain expert reports furnished by the Defendants on August 31, 2006.  For the reasons that follow, the court will deny the first two motions and grant the motion to exclude expert reports furnished on

August 31, 2006.[1]

---

[1] The court considered the following documents in rendering this memorandum decision: Second Amended Scheduling Order (D.E. No. 190, entered August 16, 2006); Order Granting in Part and Denying in Part Motion to Amend Second Amended Scheduling Order & Directing Related Relief (D.E. No. 223, entered September 7, 2006) (the "Order Amending Scheduling Order"); Order Denying Motion for Reconsideration of Order Granting in Part and Denying in Part Motion to Amend Second Amended Scheduling Order & Directing Related Relief (D.E. No. 230, entered September 15, 2006) (the "Order Denying Reconsideration"); Plaintiff's Motion In Limine to Exclude Untimely Expert Reports Submitted by Defendants (D.E. No. 287, filed November 13, 2006) (the "Rebuttal Reports Motion"); Plaintiff's Motion In Limine to Exclude the Reports and Testimony of Matthew Kimmel (D.E. No. 290, filed November 13, 2006) (the "Kimmel Motion"); Declaration of Dana E. Foster and Exhibits 1-5 thereto (D.E. No. 292, filed November 13, 2006); Plaintiff's Motion In Limine to Exclude the Parol Evidence in Connection with the Asset Purchase Agreement Between Michael Reese Medical Center Corporation and Galen Hospital Illinois, Inc. (D.E. No. 293, filed November 13, 2006) (the "Parol Evidence Motion"); Declaration of Dana E. Foster and Exhibits 1-4 attached thereto (D.E. No. 295, filed November 13, 2006); Defendants' Memorandum in Opposition to Plaintiff's Motion In Limine to Exclude the Reports and Testimony of Matthew Kimmel and all attachments thereto (D.E. No. 319, filed December 1, 2006) (the "Kimmel Opposition"); Opposition to Plaintiff's Motion In Limine to Exclude Parol Evidence in Connection with the Asset Purchase Agreement Between Michael Reese Medical Center Corporation and Galen Hospital Illinois, Inc. and all attachments thereto (D.E. No. 322, filed December 1, 2006); Opposition to Plaintiff's Motion In Limine to Exclude Rebuttal Expert Reports Submitted by Defendants and all attachments thereto (D.E. No. 326, filed December 1, 2006) (the "Rebuttal Reports Opposition"); Plaintiff's Reply in Support of His Motion In Limine to Exclude Untimely Expert Reports Submitted by Defendants and Exhibit A thereto (D.E. No. 340, filed December 8, 2006) (the "Rebuttal Reports Reply"); Plaintiff's Reply in Support of His Motion In Limine to Exclude the Reports and Testimony of Matthew Kimmel and Exhibits 1-4 thereto (D.E. No. 342, filed December 8, 2006); Plaintiff's Reply in Support of His Motion In Limine to Exclude Defendants' Use of Parol Evidence (D.E. No. 343, filed December 8, 2006) (the "Parol Evidence Reply").

I

Alberts argues that any extrinsic evidence relating to the APA should be excluded under the parol evidence rule. The court would agree with him if he were pursuing a breach of contract claim formerly held by Michael Reese, but this is a fraudulent transfer suit brought under 11 U.S.C. § 544, not an assumed cause of action brought pursuant to § 541. "A document which is a clear embodiment of the intent of the parties which has the purpose or effect of defrauding creditors of the bankruptcy estate is not protected by the parol evidence rule." Carmel v. River Bank Am. (In re FBN Food Services, Inc.), 175 B.R. 671, 682 (Bankr. N.D. Ill. 1994); accord Covey v. Milman (In re Circle P Enterprises, Inc.), 1998 WL 34065296, **1-2 (Bankr. C.D. Ill. Dec. 28, 1998).[2]

There are two reasons for this rule. First, the "very essence" of a fraudulent transfer suit is to identify the "true nature" of a transaction, and "the parol evidence rule can[not]

---

[2] See also Mitchell v. Clark, 448 So. 2d 681, 685 (La. 1984) ("Parol evidence can be used by a creditor to bring back into the estate of the debtor property which the debtor has fraudulently transferred"); Mass. Elec. Co. v. Pac. Nat'l Inv. Corp., 404 N.E.2d 1258, 1260 (Mass. Ct. App. 1980) ("The essence of a lawsuit under [Massachusetts's prior fraudulent transfer law] is to establish fraud, and the admission of extrinsic evidence bearing on that question does not violate the parol evidence rule."); Frost & Johnson v. Bebout, 14 La. 104 (La. May 1839), available at 1839 WL 930 ("a creditor may show the real character of the conveyance by which the property of his debtor is protected from his pursuit").

function as a false prophet to preclude consideration of evidence of the true nature of the transaction in question." In re Zedda, 103 F.3d 1195, 1206 (5th Cir. 1997) (holding that trustee could not use parol evidence to exclude evidence in fraudulent conveyance suit brought under 11 U.S.C. § 548).  This is a corollary to the well-established proposition that the parol evidence rule does not apply when a transaction is fraudulent. King v. Indus. Bank of Washington, 474 A.2d 151, 155 (D.C. 1984).[3]

    Second, to the extent that Alberts invokes § 544(b), he steps into the shoes of an unsecured creditor of the estate.  A creditor would be "a third person, not a party to, nor representing a party to, the act." Groves v. Steel, 2 La. Ann. 480 (La. Apr. 1847), available at 1847 WL 3400.  It is axiomatic that the parol evidence rule does not apply to disputes involving strangers to the contract at issue. Cunningham v. Day Bros. Eng'g Co., 55 A.2d 89, 90 (D.C. 1947); accord Collins v. Collins,

---

[3] Alberts cites to Arizona case law in defining and describing the parol evidence rule.  (Parol Evidence Mot. ¶¶ 6-8).  His choice of law is incorrect. See In re FBN Food Services, Inc., 175 B.R. at 682 ("When the parol evidence rule is an issue in a bankruptcy case, the court must apply the law of the state in which it sits in order to resolve whether the rule should be applied.").  As there is no discrepancy between District of Columbia law and Arizona law with respect to the parol evidence rule, this error is a harmless one. Compare King, 474 A.2d at 155, with Davies v. Courtney, 463 P.2d 554, 555 (Ariz. Ct. App. 1970) ("exceptions to the Parol Evidence Rule arise where there has been fraud").

5

52 P.2d 1169, 1174 (Ariz. 1935).[4] The court will therefore deny Alberts's motion to exclude parol evidence submitted by the Defendants with respect to the APA.[5]

II

Alberts seeks to preclude the testimony and reports of Matthew Kimmel, an expert witness retained by the Defendants, on the grounds that Kimmel's testimony and expert report is redundant of the expert testimony to be presented by David Felsenthal and is therefore prohibited by Fed. R. Evid. 403

---

[4] Alberts emphasizes that he is a representative of the estate who acts on behalf of the creditor body as a whole. (Parol Evidence Reply ¶¶ 6-8). His status as an estate representative allows him to use § 544 of the Bankruptcy Code, but that statute allows him to avoid only those transfers that an unsecured creditor of the estate could have avoided under state law. 11 U.S.C. § 544(b). An unsecured creditor of the estate could not have avoided a transaction by invoking the parol evidence rule; therefore, Alberts should not be allowed to do so, either.

[5] The court respectfully disagrees with the bankruptcy court's application of the parol evidence rule in Viscount Air Services, Inc. v. Cole (In re Viscount Air Services, Inc.), 232 B.R. 416 (Bankr. D. Ariz. 1998). In that case, the bankruptcy court held that the parol evidence rule prohibited the transferee of an allegedly fraudulent conveyance from asserting that the assets transferred by the debtor were never assets of the estate based on a lease entered into by the debtor. Id. at 446. The court did not consider whether the chapter 11 trustee was a stranger to the debtor's lease for purposes of the fraudulent conveyance suit under § 544, nor did it consider whether fraudulent conveyances should be subject to the parol evidence rule in light of the considerations raised by the courts in In re FBN Food Services and In re Zedda. Id. This court does not find the bankruptcy court's mechanical application of the parol evidence rule in In re Viscount Air Services persuasive given the more detailed and nuanced reasoning set forth in In re FBN Food Services and In re Zedda.

(applicable to this court pursuant to Fed. R. Evid. 101) as cumulative evidence.  The Defendants argue that these witnesses will cover different issues because Felsenthal is essentially a fact witness who will testify to his valuation of Michael Reese Hospital's property in 1998, whereas Kimmel will testify as to the validity of that earlier valuation.  (Kimmel Opp'n at 5).  As the Defendants see it, "Mr. Kimmel and Mr. Felsenthal are directly analogous to a retained expert and treating physician, respectively, in a personal injury case."  (Kimmel Opp'n at 10).

Based on the Defendants' representations, it appears that Felsenthal's testimony may be relevant in part because it demonstrates that the Defendants entered into the APA in good faith.  That issue is the subject of separate motions for summary judgment filed by the Defendants and fellow defendant Western Plains Capital, Inc.  See Alberts v. HCA, Inc. (In re Greater Southeast Cmty. Hosp. Corp. I), slip op. at 26-28 (Bankr. D.D.C. January 2, 2006).  If the court finds that there is a genuine dispute of material fact as to whether the Defendants acted in good faith, Felsenthal can testify as a fact witness at trial.  On the other hand, there will be no need for Felsenthal to testify to the generally understood worth of Michael Reese Hospital's property in 1998 except to the extent that he is testifying as an expert witness if the court grants the Defendants summary judgment on the issue of good faith.

7

Given that Felsenthal's testimony may turn out to be relevant only insofar as it is expert in nature, it may well be the case that Kimmel's testimony would add little to anything said by Felsenthal at trial. At the same time, there is no undue prejudice to Alberts in giving the Defendants the option of calling either or both of the witnesses if they so desire.[6] To the extent that Kimmel's opinion parrots that of Felsenthal, his testimony can be discounted as cumulative. To the extent that it differs from Felsenthal's opinion, the inconsistency between the two opinions would seem to benefit Alberts as much as it would the Defendants.

Either way, the Defendants should be allowed to use their experts to whatever end they see fit unless and until Alberts demonstrates actual undue prejudice arising from the Defendants' presentation. A few hours spent at trial is not enough. The court will deny Alberts's motion <u>in limine</u> with respect to Kimmel.

### III

On August 31, 2006, the Defendants furnished four expert reports concerning issues for which Alberts bears the burden of

---

[6] The situation would be different if this were a jury trial. In that case, Albert's concern that the factfinder might "ignore the law and facts, and simply perform a comparative count as to the number of experts each side has retained" would have some bite to it. (Kimmel Mot. at 8). As things stand, however, the court is more than capable of distinguishing between the quantity and quality of the parties' evidence.

proof at trial.  The timing of the reports appears to run afoul of the scheduling order in effect at that time, which states in pertinent part:

> Unless otherwise ordered, the disclosures under Fed. R. Civ. P. 26(a)(2) of experts and the furnishing of the expert's written report shall be made no later than **July 24, 2006**, for experts on any issues on which the party bears the initial burden of going forward, no later than **August 17, 2006**, for responsive experts by the party not bearing the initial burden of going forward with the evidence on the issue, and no later than **August 31, 2006**, for rebuttal experts of either party.

(Second Am. Scheduling Order ¶ 4) (emphasis in original).

This order appears to contemplate the following procedure for expert discovery with respect to the Defendants: (1) the Defendants would furnish expert reports with respect to any issue for which they bear the burden of proof (e.g., any affirmative defenses) by July 24, 2006; (2) the Defendants would furnish expert reports in response to any reports filed by Alberts on issues for which Alberts bears the burden of proof of trial no later than August 17, 2006; and (3) the Defendants would furnish expert reports rebutting any responsive reports filed by Alberts on issues for which the Defendants bear the burden of proof at trial no later than August 31, 2006.  Because the four expert reports at issue in the instant motion did not concern an issue for which the Defendants bear the burden of proof at trial, the reports should have been furnished by August 17, 2006, not August

9

31, 2006.[7]

The Defendants argue that the phrase "rebuttal experts" in paragraph four of the Second Amended Scheduling Order is ambiguous and that such ambiguity should be construed against Alberts under the doctrine of contra proferentum. (Rebuttal Reports Opp'n at 6-7). But the interpretation preferred by the Defendants--that the scheduling order intended for the parties to furnish a set of "responsive" expert reports on August 17, 2006, and then furnish another set of reports responding to the other side's initial reports two weeks later--makes no sense whatsoever. Under District of Columbia law, "the court must determine what a reasonable person in the position of the parties would have thought the disputed language meant." Unfoldment, Inc. v. D.C. Contract Appeals Bd., 909 A.2d 204, 209 (D.C. 2006) (quoting Independence Mgmt. Co. v. Anderson & Summers, LLC, 874 A.2d 862, 867 (D.C. 2005) (further quotation omitted)) (emphasis added).

As for the doctrine of contra proferentum, it has no application here because the Second Amended Scheduling Order was signed and filed by both parties, and in any event is available

---

[7] In point of fact, the authors of three of the reports furnished responsive expert reports on August 17, 2006. The Defendants have never explained why these experts needed an additional two weeks to furnish separate reports "rebutting" (as opposed to "responding to") the reports furnished by Alberts on July 24, 2006.

10

as a tool of contract interpretation only where other factors are not dispositive. <u>Mesa Air Group, Inc. v. Dep't of Transp.</u>, 87 F.3d 498, 506 (D.C. Cir. 1996).  The court would sooner look to the extrinsic evidence produced by the parties in resolving any ambiguities in the scheduling order, and that evidence supports Alberts's interpretation of the scheduling order.  (Rebuttal Reports Reply at Ex. A).[8]  The only thing that supports the Defendants' interpretation of the scheduling order is the Defendants themselves.

The Defendants argue in the alternative that the expert reports furnished on August 31, 2006, ought not be stricken even if they were furnished out of time because Alberts will suffer no prejudice from their admission.  The court disagrees.  It denied Alberts leave to furnish the rebuttal report of Robert Wilson out of time based on the deadlines set forth in the Second Amended Scheduling Order.  (Order Denying Reconsideration at 2-3).  It would be fundamentally unfair to forgive the Defendants' similarly untimely reports because the Defendants went ahead and

---

[8]  The Defendants suggest that their own responses to interrogatories served on them by Alberts demonstrate that their interpretation of the Second Amended Scheduling Order was made in good faith, (Rebuttal Reports Opp'n at 3), but these responses were served on August 21, 2006--four days <u>after</u> the August 17, 2006 deadline for responsive expert reports.  The Defendants' interrogatory responses do not enlighten the court one way or the other with respect to the Defendants' understanding of the Second Amended Scheduling Order when it was first written and entered on the court's docket.

11

furnished the reports without seeking an extension of time in the first place.[9]

The Defendants might have avoided this result had they consented to an extension of time for both Demchick and Wilson to furnish their expert reports.  Instead, they chose to enforce the scheduling order as it was written and take their chances as to how the court would rule with respect to the admissibility of their own late-filed reports.  As the court has noted before, the Defendants have every right to engage in "scorched earth" litigation tactics, but they ought not be heard to complain if

---

[9] The Defendants argue that it would be unfair to preclude their "rebuttal" reports when Alberts was granted leave to furnish the rebuttal report of Neil Demchick outside the deadlines set forth in the Second Amended Scheduling Order. (Rebuttal Reports Opp'n at 7-8).  Alberts demonstrated good cause for an extension (namely, Demchick's poor health), whereas the Defendants have never provided any cause for their delay other than their erroneous interpretation of the Second Amended Scheduling Order.  (Order Amending Scheduling Order at 2).

12

they are singed in the process.[10] The court will grant Alberts's motion to exclude the expert reports of Kevin Moss, Matthew Kimmel, James Yerges, and Troy Dahlberg served on August 31, 2006.

---

[10] The court put the Defendants on notice of the possible consequences of their intransigence on this point in its Order Denying Reconsideration. In that order, the court stated in pertinent part:

> [T]he court has already explained that it will not take a position with respect to the timeliness of the August 31 expert reports unless and until the issue is properly presented to the court by way of a motion in limine. Consequently, there can be no injustice in denying Alberts an extension of time based on the existence of those same reports.
>
> It may well be the case that the parties can resolve these issues between themselves and arrive at an amended scheduling order that resolves the unanswered questions regarding the propriety of the defendants' August 31, 2006, expert reports and the propriety of allowing Mr. Wilson to file a further report for Alberts belatedly if the defendants are allowed to keep their August 31 expert reports in place (despite a plausible reading of the Second Amended Scheduling Order as barring the defendants' August 31 expert reports because those reports were not "rebuttal reports" within the meaning of the order). However, the court can hardly be optimistic on that front given the inability of the parties to agree on so simple a matter as a hearing date or a discovery deadline. If the parties insist on entangling the court in every disagreement that arises between them, they will have to live with the decisions that they get.

(Order Denying Reconsideration at 2-3).

IV

For the reasons set forth above, the court will enter separate orders denying the Parol Evidence Motion and Kimmel Motion and granting the Rebuttal Reports Motion. The court will also exclude <u>sua</u> <u>sponte</u> any reference in Demchick's rebuttal report to the rebuttal reports furnished by the Defendants on August 31, 2006.

Separate orders follow.

[Signed and dated above.]

Copies to:

| | |
|---|---|
| Lucius B. Lau | Jeffrey W. Kilduff |
| Jeffrey E. Schmitt | Lani R. Miller |
| White & Case LLP | Stephen D. Brody |
| 701 Thirteenth Street, N.W. | O'Melveny & Myers LLP |
| Washington, DC 20005 | 1625 Eye Street, NW |
| Counsel for the plaintiff | Washington, DC 20006 |
| | Counsel for the defendants |