The decision below is hereby signed.  Dated: January
18, 2007.


_____
S. Martin Teel, Jr.
United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA


In re                          )
                               )
GREATER SOUTHEAST COMMUNITY    )   Case No. 02-02250
HOSPITAL CORP. I, *et al.*,     )   (Chapter 11)
                               )   (Jointly Administered)
             Debtors.          )
_____)
                               )
SAM J. ALBERTS, TRUSTEE FOR    )
THE DCHC LIQUIDATING TRUST,    )
                               )
             Plaintiff,        )
                               )   Adversary Proceeding No.
        v.                     )   04-10366
                               )
HCA INC., *et al.*,             )
                               )
             Defendants.       )


SUPPLEMENTAL MEMORANDUM DECISION REGARDING DEFENDANT
WESTERN PLAINS CAPITAL INC.'S MOTION FOR SUMMARY JUDGMENT

     Western Plains Capital Inc. ("Western"), one of three

defendants (the "Defendants") in this adversary proceeding

commenced by the plaintiff Sam J. Alberts, trustee for the DCHC

Liquidating Trust (the "Trust"), seeks summary judgment with

respect to all counts alleged against it in the Third Amended

Complaint filed by Alberts on November 1, 2006.  On January 4,

2007, the court heard argument with respect to this motion, at the conclusion of which it issued an oral ruling in which it partially denied Western's motion.  This supplemental memorandum decision resolves the balance of Western's motion and amends the court's oral ruling in one respect.

I

The following facts are undisputed.[1]  Michael Reese Medical Center Corporation ("Michael Reese") was formed as a wholly-owned subsidiary of Doctors Community Hospital Corporation ("DCHC"), a privately-held healthcare management company organized under the laws of Delaware.  On July 8, 1998, Michael Reese entered into an asset purchase agreement (the "APA") with Galen Hospital Illinois, Inc. ("GHI"), a corporate subsidiary of fellow defendant HCA Inc. ("HCA"), for the purchase of Columbia Michael Reese Hospital and Medical Center ("Michael Reese Hospital").  Also on July 8, 1998, Grant Hospital Corporation, another subsidiary of DCHC, signed a separate asset purchase agreement with Columbia Grant Hospital Inc. for the purchase of Grant Hospital.

On November 9, 1998, the parties signed the "Sixth

---

[1]  Unless otherwise noted, the facts set forth above are deemed to be admitted pursuant to this court's memorandum decision entered on December 6, 2006.  Alberts v. HCA Inc. (In re Greater Southeast Cmty. Hosp. Corp. I), Case No. 02-02250, Adv. Pro. No. 04-10366 (Bankr. D.D.C. Dec. 6, 2006), available at 2006 WL 3519298 ("HCA I").

Amendment" to the APA--the last such document signed prior to the
purchase of the hospital.  The sale of both hospitals closed on
November 12, 1998.  At that time, various lenders to Michael
Reese wired funds (the "Michael Reese Transfers")[2] to a Wachovia
bank account owned by C/HCA Capital, LP (the "Capital LP").
(Def. Statement of Undisputed Material Facts ¶ 9 (D.E. No. 335,
filed Dec. 7, 2006).)[3]  The Capital LP consisted of a general
partner, C/HCA Capital, GP, Inc. (the "Capital GP"), and a
limited partner, Western.  Western owned the Capital GP at the
time of the Michael Reese Transfers and merged into a single
entity with the Capital GP in December of 2000.  (Kilduff Decl.
Ex. A.)  The Capital LP ceased to exist in that same month.
(Kilduff Decl. Ex. A.)

On November 20, 2002, DCHC filed for chapter 11 relief along
with several of its subsidiaries (collectively the "Debtors"),
including Michael Reese.  After protracted proceedings lasting
almost 18 months, the Debtors achieved confirmation of their

---

[2] Alberts also seeks to recover the value of certain
obligations incurred by Michael Reese in connection with the
purchase of Michael Reese Hospital, but those obligations
necessarily benefitted GHI rather than Western.

[3] Alberts concedes only that the Capital LP owned the
account into which funds were transferred by Michael Reese's
lenders "according to Western," (Pl. Statement of Disputed
Material Facts ¶ 9 (D.E. No. 379, filed Dec. 20, 2006)), but he
can point to no facts in the record contradicting Western's
exhibits, which suggest that the account was owned by the Capital
LP.  (Kilduff Decl. Ex. F (D.E. No. 336, filed Dec. 7, 2006).)

second amended plan of reorganization (the "Plan") on April 5, 2004.  Section 6.6 of the Plan provides for the creation of the Trust, which is charged with liquidating certain assets of the Debtors and distributing the proceeds to certain classes of creditors.  Among the assets transferred to the Trust were fraudulent conveyance and other actions authorized under chapter 5 of the Bankruptcy Code.  (Plan §§ 4.10, 6.6(f).)

Acting in his capacity as trustee, Alberts initiated the instant adversary proceeding on November 18, 2004, seeking to recover the Michael Reese Transfers under the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/1 et seq. (1990) (the "IUFTA"), pursuant to 11 U.S.C. § 544.  After amending his complaint twice, Alberts moved for summary judgment on March 9, 2006.  That motion was granted in part and denied in part in an oral decision dated April 4, 2006, and accompanying order entered on June 2, 2006.

Alberts filed a motion for partial summary judgment on July 27, 2006, on the discrete issue of whether the Second Amended Complaint was barred by the IUFTA's statute of repose.  See 740 Ill. Comp. Stat. § 160/10(a).  HCA and GHI responded by filing both an opposition and a cross-motion for summary judgment.  The very next day, Alberts filed a motion to amend his complaint a third time to include Western as a defendant.  The court granted Alberts leave to add Western as a party in a decision and order

4

entered on October 12, 2006.

On December 6, 2006, the court entered a memorandum decision and accompanying order resolving in part the motion for partial summary judgment filed by Alberts and the cross-motion for summary judgment filed by the Defendants. HCA I, supra n.1.  The balance of those motions was decided in a memorandum decision and order entered on January 3, 2007, regarding the parties' responses to a separate order to show cause entered on December 6, 2006.  The court entered yet another memorandum decision and order partially resolving a separate motion for summary judgment filed by GHI and HCA on January 3, 2007.  Alberts v. HCA, Inc. (In re Greater Southeast Cmty. Hosp. Corp. I), Case No. 02-02250, Adv. Pro. No. 04-10366 (Bankr. D.D.C. Jan. 3, 2007).  The court supplemented that decision by way of an oral ruling issued on January 5, 2007.  Each decision is binding on Western as law of the case.

On January 4, 2007, the parties presented their arguments at a hearing on Western's motion.  At the conclusion of that hearing, the court issued an oral ruling in which it denied Western's motion for summary judgment with respect to whether Western succeeded to the liabilities of the Capital LP and was therefore a proper party to this adversary proceeding and whether Alberts's complaint was barred by the IUFTA's statute of repose. The court also granted summary judgment in favor of Alberts sua

5

sponte with respect to the former issue.  The court reserved

judgment on all other issues raised in Western's motion.[4]

II

Pursuant to Fed. R. Civ. P. 56 (as incorporated by Fed. R.

Bankr. P. 7056), summary judgment will be granted where "there is

no genuine issue as to the material fact and the . . . moving

party is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  The court must deny summary judgment where there is a

genuine issue as to any material fact.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247 (1986).  If the movant makes a

properly supported motion, the burden shifts to the opposing

party to demonstrate specific facts showing that there is a

genuine issue for trial.  Id.

If the moving party does not bear the burden of proof at

trial on an issue, summary judgment may be granted if the moving

---

[4]  As part of its oral decision, the court rejected the
argument maintained by Alberts that Western could not assert that
it received the Michael Reese Transfers "for value" as required
by 11 U.S.C. § 550(b)(1), see part II.A, infra, because the
transfers were used to pay off antecedent debt owed by GHI to a
separate entity known as Columbia/HCA Capital Corp. (the "Capital
Corp.").  As the court explained at the January 4, 2007 hearing
on Western's motion, this argument is self-defeating: if the
Capital Corp. were a separate entity from Western, and if the
Michael Reese Transfers were used to satisfy debts owed to the
Capital Corp. instead of debts owed to Western, Western would
have been a mere conduit of the transfers to the Capital Corp.,
and the Capital Corp., not Western, should have been added to
Alberts's suit.  The issue is moot because Western conceded at
the January 4, 2007 hearing that the Capital LP was a successor-
in-interest to the Capital Corp. with respect to the debts owed
by GHI and satisfied in part by the Michael Reese Transfers.

6

party shows "that there is an absence of evidence to support the
nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317,
325 (1986).  When a movant points to such a lack of evidence, the
non-moving party must come forward with evidence that supports
its case.  Id.  The court must view the opposing party's evidence
in the light most favorable to non-movant's position and draw
inferences in favor of that party, provided such inferences are
justifiable or reasonable.  Matsushita Elec. Indus. Co., Inc. v.
Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

In light of the court's January 4, 2007 oral decision, the
only issue left for the court's consideration is whether Western
is entitled to summary judgment on its affirmative defense that
it was a subsequent transferee of the Michael Reese Transfers who
received those transfers for value, in good faith, and without
knowledge of Michael Reese's insolvency pursuant to 11 U.S.C.
§ 550.  The court resolves that extant issue below.  In addition,
the court supplements its earlier oral ruling with respect to
Western's statute of repose defense based on its further
contemplation of that issue since the January 4, 2007 hearing on
Western's motion.

A.   Affirmative Defense under 11 U.S.C. § 550(b)

Section 550 of the Bankruptcy Code provides in pertinent
part:

> (a) Except as otherwise provided in this
> section, to the extent that a transfer is

7

> avoided under section 544 . . . of this title,
> the trustee may recover, for the benefit of
> the estate, the property transferred, or, if
> the court so orders, the value of such
> property, from--
>> (1) the initial transferee of such
>> transfer or the entity for whose benefit
>> such transfer was made; or
>> (2) any immediate or mediate transferee
>> of such initial transferee.
>
> (b) The trustee may not recover under section
> (a)(2) of this section from--
>> (1) a transferee that takes for value,
>> including satisfaction or securing of a
>> present or antecedent debt, in good
>> faith, and without knowledge of the
>> voidability of the transfer avoided; or
>> (2) any immediate or mediate good faith
>> transferee of such transferee.

11 U.S.C. § 550.  "In other words, an initial transferee is strictly liable to the trustee if the transaction is avoidable under [§ 544], but an entity that receives assets from an initial transferee in good faith and without knowledge of the avoidability of the transfer may assert a defense against the trustee."  Bailey v. Big Sky Motors, Ltd. (In re Ogden), 314 F.3d 1190, 1196 (10th Cir. 2002); accord Ross v. United States (In re Auto-Pak, Inc.), 73 B.R. 52, 55 (D.D.C. 1987).[5]  In this case, the court does not need to consider whether Western, as the successor-in-interest to the Capital LP, can satisfy the requirements of § 550(b) because there is at least a genuine

_____

[5]  Alberts is not a "trustee" within the meaning of § 550, but he is entitled to step into the shoes of a trustee as a representative of the estate pursuant to 11 U.S.C. § 1123.  HCA I, slip op. at 11.

dispute of material fact as to whether the Capital LP was the initial transferee of the Michael Reese Transfers.

Neither the Bankruptcy Code nor the legislative history underlying it suggest a definition for the term "transferee." In _Bonded Fin. Services, Inc. v. European Am. Bank_, 838 F.2d 890 (7th Cir. 1988) ("_Bonded_"), the Seventh Circuit stepped into the breach, opining that the term "'[t]ransferee' is not a self-defining term; it must mean something different from 'possessor' or 'holder' or 'agent.'" _Id._ at 894. The court concluded that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." _Id._ at 893. This definition has found

broad acceptance among the various circuits.[6]

There is no question that the Capital LP would not have qualified as a "transferee" had it received the Michael Reese Transfers merely in its capacity as the administrator of a "Master Concentration Account" used to clear and post all monies coming to any HCA entities. (Def. Statement of Undisputed Material Facts ¶ 9.) A party that receives a transfer solely in its capacity as an agent or fiduciary for another is a "mere conduit" for its principal, which is the true recipient of the

---

[6]  See, e.g., Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 56-58 (2d Cir. 1997); Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.), 127 F.3d 1195, 1198-99 (9th Cir. 1997); Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties Ltd. P'ship), 99 F.3d 151, 154-55 (4th Cir. 1996); Rupp v. Markgraf, 95 F.3d 936, 938-39 (10th Cir. 1996); Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.), 904 F.2d 588, 597-600 (11th Cir. 1990) ("Arab Banking"); Richardson v. IRS (In re Anton Noll, Inc.), 277 B.R. 875, 878-79 (B.A.P. 1st Cir. 2002). The Ninth Circuit distinguishes between what it terms the "dominion" test of Bonded, which it describes as "focus[ing] on whether the recipient of funds has legal title to them and the ability to use them as he sees fit," and the "control" test advanced by the Eleventh Circuit in Nordberg v. Societe Generale (In re Chase & Sanborn Corp.), 848 F.2d 1196 (11th Cir. 1988) ("Societe Generale"), which it describes as "a more gestalt view of the entire transaction to determine who, in reality, controlled the funds in question." Universal Service Admin. Co. v. Post-Confirmation Comm. of Unsecured Creditors of Incomnet Communications Corp. (In re Incomnet, Inc.), 463 F.3d 1064, 1071 (9th Cir. 2006). The Eleventh Circuit does not appear to recognize this supposed distinction, as it relied upon (and cited to) both Bonded and Societe Generale throughout its opinion in Arab Banking. 904 F.2d at 597-600.

funds.  <u>Bonded</u>, 838 F.2d at 893-94.[7]  This is as much a principle

of the law of agency as it is of bankruptcy.  <u>Id.</u>

The matter is complicated, however, by the Capital LP's

apparent decision to set off the funds it received from Michael

Reese's lenders on behalf of GHI against separate amounts owed by

GHI to the Capital LP pursuant to the terms of an intercompany

loan agreement (the "Loan Agreement") and promissory note entered

into by GHI and the Capital Corp., the Capital LP's predecessor-

in-interest, in 1995.  The Loan Agreement provided in pertinent

part:

> 3.  <u>Mandatory Loan Prepayments</u>.  Outstanding
> advances made pursuant hereto shall be subject
> to mandatory prepayment to the extent of any
> daily positive balances in the Cash Account,
> all of which Borrower [<u>i.e.</u>, GHI] hereby
> assigns and pledges to Lender and irrevocably
> directs the Named Account Holder to pay on a
> daily basis to Lender [<u>i.e.</u>, the Capital
> Corp.] for repayment of such advances (first
> to accrued interest and then to principal).

(Kilduff Decl. Ex. D.)

This contractual provision (and the Capital LP's apparent

---

[7]  <u>Accord</u> <u>Rupp</u>, 95 F.3d at 941-42 (quoting <u>Richardson v.
FDIC (In re M. Blackburn Mitchell Inc.)</u>, 164 B.R. 117, 127
(Bankr. N.D. Cal. 1994)); <u>Arab Banking</u>, 904 F.2d at 598-99.

enforcement of it)[8] puts the court on the horns of a dilemma.  On

the one hand, there is precedent for the notion that a party

exercising a setoff based on the receipt of transferred funds is

a "transferee" for purposes of § 550, which would suggest that

the Capital LP was the initial transferee of the funds at issue

here.  E.g., Liebersohn v. IRS (In re C.F. Foods, L.P.), 265 B.R.

71, 79-80 (Bankr. E.D. Pa. 2001).  On the other hand, at least

one court has held that a party restricting its own use of

transferred funds in advance by contractual arrangement is still

---

[8]  Western cites to the deposition of GHI and HCA vice-
president Michael Bray in support of the proposition that "GHI
instructed C/HCA Capital, LP to apply part of the amount that had
been credited to the GHI general ledger towards a reduction in a
pre-existing debt between C/HCA Capital, LP and GHI."  (Def.
Reply at 6-7 (D.E. No. 393, filed December 29, 2006).)  The cited
testimony reads as follows:

> Q.   To your knowledge, had Galen Hospital--
> GHI accumulated debt to C/HCA Capital LP prior
> to the sale of Michael Reese Hospital in 1998?
> A.   Yes.
> Q.   To your knowledge, was the proceeds
> used--strike that.  To your knowledge, were
> the proceeds obtained by GHI from the sale of
> Michael Reese applied to that debt?
> A.   Yes.

(Kilduff Decl. Ex. E.)
     Nothing in this testimony remotely suggests that GHI
"instructed" the Capital LP to do anything.  Even if this were
the case, GHI's "instruct[ion]" would be nothing more than an
acknowledgment that under the Loan Agreement the holder of the
"Cash Account" (i.e., the Capital LP) was already authorized to
pay the funds to the Capital LP as the successor-in-interest to
the Capital Corp.  Presumably, the Capital LP had the wherewithal
to send funds to itself without GHI's assistance, which is why
there is no evidence in the record of any "instruct[ion]" from
GHI.

the initial transferee of the funds if the funds are received by the contracting party's agent.  McCarty v. Richard James Enterprises, Inc. (In re Presidential Corp.), 180 B.R. 233, 238 (B.A.P. 9th Cir. 1995).  This would suggest that GHI, as the principal of the Capital LP (in its capacity as manager of the Master Concentration Account), was the initial transferee.

Many courts apply the "dominion and control" test in a mechanical fashion, focusing on the existence of an unfettered legal right to use the transferred funds.  The Presidential court, in contrast, focused on a more flexible application of the "dominion and control" test utilizing principles of agency law and looking at all of the circumstances surrounding the transfer of funds.  180 B.R. at 238-39.[9]  Both approaches have merit.  The

---

[9]  In Presidential, the debtor transferred funds into an escrow account in partial satisfaction of a buyer's obligations under a contract for the sale of real estate, and a portion of the funds were subsequently used to pay the real estate agent's commission.  180 B.R. at 234-35.  The chapter 7 trustee sought to recover the avoided transfer from the real estate agent on the theory that the escrow agent was a financial conduit for the real estate agent.  Id.  The Bankruptcy Appellate Panel for the Ninth Circuit disagreed, holding that the escrow agent was a mere conduit for the buyer instead because the escrow agent was considered an agent of the buyer at the time of the avoided transfer under applicable state law.  Id. at 237-38.

The bankruptcy appellate panel in Presidential further noted that "[i]t would be inequitable, examining the transaction as a whole, to permit those parties best positioned to investigate the validity of a transfer to shift strict liability onto merely incidental beneficiaries of the escrow agreement."  Id. at 239.  To the extent that the bankruptcy appellate panel based its decision on considerations of equity, it may run afoul of the Ninth Circuit's decision in Incomnet.  463 F.3d at 1070 n.7.

13

"dominion and control" test formulated by the Seventh Circuit in

Bonded has its roots in, and in many ways is an extension of, the

general rules of imputation that apply in all principal-agent

settings.  838 F.2d at 893-94.[10]  To the extent that courts apply

the "dominion and control" test in a manner that contradicts the

general principles of agency law from which the test partially

---

     [10]  The court does not mean to suggest that the "dominion
and control" test is necessarily synonymous with (or reducible
to) general principles of agency law.  As the Ninth Circuit noted
in Incomnet, "[t]he focus on 'dominion' is useful for those
unusual situations in which legal title to funds and the right to
put those funds to use have been separated."  463 F.3d at 1073-
74.  The test allows, inter alia, an unintended recipient of
transferred funds to qualify as a "transferee" if the recipient
"has sufficient authority over the funds to direct their
disbursement."  Id. Thus, the Capital LP qualified as a
"transferee" when it received the Michael Reese Transfers and the
authority to use those funds pursuant to the Loan Agreement,
whereas Galen Healthcare, Inc. another subsidiary of HCA, was not
a "transferee" of the Michael Reese Transfers notwithstanding the
fact that the Capital LP credited that subsidiary's account in
error when it first received those transfers from Michael Reese's
lenders because Galen Healthcare, Inc. was never authorized by
the Capital LP's principal (GHI) to use those funds.

14

arises, such application should be reconsidered.[11]  It is
possible, as was the case in Presidential, for a principal to
restrict its own use of any funds received by its agent without
itself becoming an agent of the subsequent recipient of those
funds, and a recipient of funds for whom use of the funds is
restricted, but who nevertheless has ownership of the funds, can
likewise be a "transferee" rather than a "conduit" for purposes
of § 550.  See In re Incomnet, Inc., 463 F.3d at 1073-75 (holding
that the Universal Administration Service Company ("USAC") was
the initial transferee of funds directed to the Universal Support
Fund ("USF") notwithstanding regulatory restrictions placed on
the use of those funds by the Federal Communications Commission
("FCC") because the USAC held legal title to the USF and "USAC is
not simply holding funds in the USF as the FCC's agent").

_____

[11]    The court thus views with some skepticism those
decisions that have defined "dominion and control" to mean full
and unfettered control over the funds in question.  See, e.g., In
re Circuit Alliance, Inc., 228 B.R. 225, 232 (Bankr. D. Minn.
1998) (holding that to exercise "dominion and control" for
purposes of § 550 requires "an unfettered legal right to use the
funds for the possessor's own purposes and benefit").  To be
sure, the court takes no issue with the memorable language in
Bonded to the effect that a recipient of transferred funds has
"dominion" over the funds when the recipient is "free to invest
the whole [amount] in lottery tickets or uranium stocks."  838
F.2d at 894.  It stands to reason, however, that a transferee can
choose its investments in advance of receipt of the funds without
forfeiting its status as a transferee.  The key question is not
whether the recipient of transferred funds has chosen to restrict
its use of those funds before it receives the funds, but whether
it has abdicated authority over those funds to another entity
prior to receipt of the funds.

But this is not one of those cases.  The Loan Agreement
states that GHI "assigns and pledges . . . any daily positive
balances in the Cash Account" to the Capital Corp (the
predecessor-in-interest to the Capital LP), and irrevocably
directed payment of such amounts to that same entity.  (Kilduff
Decl. Ex. D.)  This is not so much a general contractual
restriction of GHI's ability to use its funds as it is an
assignation of all rights to those funds to the Capital Corp.
Unlike the buyer in <u>Presidential</u>, who could at least claim the
funds deposited in an escrow account in his name as his own while
the funds were still in that account (notwithstanding his
inability to withdraw those funds from the account), Western has
not established that GHI ever had a legal claim over the funds
transferred to the Capital LP: under the terms of the Loan
Agreement, those funds belonged to the Capital LP as successor-
in-interest to the Capital Corp.  Unless Western establishes that
the terms of the Loan Agreement were inapplicable (which it has
not), the court can infer from the Capital LP's setoff (as
reflected in one of Western's own exhibits) that there was a
"daily positive balance" unless and until Western adduces

evidence to the contrary.[12]

The situation here parallels the circumstances in Pereira v. Dow Jones Chem. Co. (In re Trace Int'l Holdings, Inc.), 287 B.R. 98 (Bankr. S.D.N.Y. 2002).  In that case, the chapter 7 trustee sought to recover, inter alia, certain dividend payments made by the debtor to Dow Chemical Company ("Dow") in the year preceding the debtor's bankruptcy filing.  Id. at 104.  Dow did not purchase the stock directly from the debtor.  Instead, the debtor had previously sold the stock to BSI Acquisitions Corp. ("BSI"), which, in turn, pledged the stock (valued at $20,000,000.00) as security in exchange for a $20,000,000.00 loan from Dow.  Id. at 101.  Per the parties' arrangement, the dividends distributed by the debtor matched precisely the amounts and payment dates of the interest due under the loan agreement between Dow and BSI.  Id. Eventually, Dow and BSI entered into an escrow agreement whereby the debtor would pay its dividends to an escrow agent, who would

---

[12]  Western argues that there was no "daily positive balance[]" on the date that the Michael Reese Transfers were received by the Capital LP, (Def. Reply 7-8), but, as the court notes above, the delay in crediting GHI for the transfers was caused by the Capital LP's erroneous assignation of those transfers to the account maintained by a different HCA subsidiary.  See n.10, supra.  Moreover, it is unclear from the reports submitted by Western in support of its motion for summary judgment whether there was a positive or negative balance in GHI's account on the date that it received credit for the Michael Reese Transfers (indeed, at least one report suggests that the transfers were debited and credited at the same time), (Kilduff Decl. Exs. A, C), and it is Western which bears the burden of proving its "mere conduit" defense.

17

then deliver the dividend payments to Dow.  Id. at 102.

The chapter 7 trustee sought to recover the dividend payments from Dow.  Dow argued that it was a subsequent transferee because the dividend payments were made in the first instance to an escrow account owned by BSI, making BSI the initial transferee.  Id. at 106.  The bankruptcy court disagreed:

> Although [the debtor] made the dividend
> payments to the escrow agent for the benefit
> of BSI, BSI never had control over the
> dividend payments or the right to use them.
> Instead, the Escrow Agreement directed the
> escrow agent to remit the payments to Dow on
> account of BSI's obligations under the Dow/BSI
> Loan Agreement.  Consequently, Dow was the
> initial transferee of the [debtor's] payments.

Id. at 106.[13]

Like the lender in Trace, Western argues that the Capital LP was an immediate or mediate transferee from the borrower (GHI) because the borrower owned the account into which the transferred funds were delivered.  Like that lender, Western's argument fails because the borrower entered into a contractual arrangement whereby any funds deposited into its accounts were pledged to the lender and automatically directed to that lender, in effect turning the borrower into a conduit for the lender.  In the

---

[13]  See also Danning v. Miller (In re Bullion Reserve of North America), 922 F.2d 544, 549 (9th Cir. 1991) (holding that corporate director in whose name stock was purchased using funds transferred by the president of the company was not a "transferee" for purposes of § 550 because the stock was pledged to the president, depriving the director of dominion over the funds).

parlance of <u>Bonded</u>, this was not a "two-step" transaction in which the challenged transfers were made to one party and subsequently transferred to another, but rather was a "one-step" transaction in which the transfers went to one conduit (the Capital LP, acting in its capacity as manager of the Master Concentration Account), then to another conduit (GHI), and finally to the initial transferee (the Capital LP).

To the extent that GHI received the Michael Reese Transfers at all,[14] it did so as a mere conduit for its lender, the Capital LP.  Thus, Western, as successor-in-interest to the Capital LP, is the initial transferee based on the record before the court. The court will therefore deny Western's motion for summary

---

[14]  The only evidence supporting the notion that GHI's account was ever credited for the Michael Reese Transfers consists of a series of reports authenticated by counsel for Western and GHI and HCA vice-president Michael Bray.  (Kilduff Decl. Exs. A, C).  These reports are obviously hearsay and normally could not be admitted under the business records exception to Fed. R. Evid. 803 based upon the statements made by Kilduff and Bray in their respective declarations, Fed. R. Evid. 803(6), but Alberts has stipulated to the admission of the reports notwithstanding these evidentiary issues.

19

judgment with respect to its defense under 11 U.S.C. § 550(b).[15]

B.   Statute of Repose Defense

In its January 4, 2007 oral decision, the court concluded based on the undisputed facts before it that there was an identity of interests between Western and its fellow Defendants that prevented it from asserting its defense under the statute of repose contained within the IUFTA.[16]  The court therefore denied Western's motion for summary judgment with respect to its statute of repose defense.

Having considered the matter further, the court concludes

---

[15]   The court's ruling does not necessarily foreclose recovery against GHI.  Section 550(a) provides that both the "initial transferee" of an avoided transfer and "the entity for whose benefit such transfer was made" are strictly liable for any such transfers.  11 U.S.C. § 550(a)(1).  GHI, as a mere conduit of the Michael Reese Transfers that obtained a reduction of its debt to the Capital LP through that entity's eventual receipt of those funds, may very well fall into the latter category.  See Bonded, 838 F.2d at 896 (concluding that "§ 550 distinguishes transferees (those who receive the money or other property) from entities that get a benefit because someone else received the money or property").

[16]   Western argued that Alberts's suit against it was barred by the statute of repose in two ways: (1) it was filed outside the time permitted by § 10 of the IUFTA, and (2) Western did not receive notice of the suit within the time required by Fed. R. Civ. P. 4(m) (as incorporated by Fed. R. Bankr. P. 7004), and therefore cannot be added as a party under the "relation back" doctrine even if one assumes that the original complaint was filed in a timely manner.  (Def. Mem. 11-14 (D.E. No. 334, filed December 7, 2006); Def. Reply 12-13.)  The first argument is barred by the law of the case created by the court in its December 6, 2006 memorandum decision.  HCA I, slip op. at 7-41. The second argument was rejected by the court in its January 4, 2007 oral decision.

20

that it is appropriate in this instance to grant summary judgment on this issue in favor of Alberts sua sponte. Ordinarily, "'the authority to enter summary judgment against a party sua sponte . . . may only be exercised so long as the losing party was on notice that she had to come forward with all her evidence.' " Athridge v. Rivas, 141 F.3d 357, 361 (D.C. Cir. 1998) (quoting McBride v. Merrell Dow & Pharm., Inc., 800 F.2d 1208, 1212 (D.C. Cir. 1986) (further quotation omitted)). Nevertheless, courts do not hesitate to grant such relief where "[n]o material facts genuinely remain in dispute and the controlling legal question has been resolved in favor of" one of the parties. Kennedy v. Whitehurst, 509 F. Supp. 226, 232 (D.D.C. 1981), aff'd Kennedy v. Whitehurst, 690 F.2d 951 (D.C. Cir. 1982).

With respect to this discrete issue, the parties' disagreement concerns the application of the governing legal standard to the facts, not the facts themselves. Given that the facts are not in dispute and the court's application of the "identity of interest" doctrine to those facts is law of the case, there is no point in allowing the issue to proceed to trial. It is both proper and prudent to grant Alberts summary judgment sua sponte on this discrete issue.

III

For the reasons set forth above, the court will deny the balance of Western's motion for summary judgment and will grant summary judgment <u>sua</u> <u>sponte</u> to Alberts with respect to Western's statute of repose defense. The court declines to award Alberts summary judgment <u>sua</u> <u>sponte</u> with respect to the issue of whether the Capital LP was the initial transferee of the Michael Reese Transfers because Western disputes whether GHI had a positive daily cash balance when its account was credited with the Michael Reese Transfers and deserves an opportunity to produce whatever additional facts it can marshal in support of that proposition at trial.

An order follows.

[Signed and dated above.]

Copies to:

Lucius B. Lau                          Jeffrey W. Kilduff
Jeffrey E. Schmitt                     Lani R. Miller
White & Case LLP                       Stephen D. Brody
701 Thirteenth Street, N.W.            O'Melveny & Myers LLP
Washington, DC 20005                   1625 Eye Street, NW
Counsel for the plaintiff              Washington, DC 20006
                                       Counsel for the defendant
                                       Western Plains Capital, Inc.