The document below is hereby signed.

Dated: April 23, 2012.



_S. Martin Teel Jr._

**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re | ) |
| | ) |
| GREATER SOUTHEAST COMMUNITY | ) Case No. 02-02250 |
| HOSPITAL CORPORATION I, | ) (Chapter 11) |
| | ) (Jointly Administered) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| SAM J. ALBERTS, TRUSTEE FOR | ) |
| THE DCHC LIQUIDATING TRUST, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding No. |
| | ) 04-10366 |
| HCA INC., _et al._, | ) |
| | ) Not for publication in |
| Defendants. | ) West's Bankruptcy Reporter. |

<u>MEMORANDUM DECISION RE BILL OF COSTS</u>

Under 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d), and D.Ct.LCvR 54.1, the defendants have filed a bill of costs to which the plaintiff Alberts has objected. Because of the objection, the Clerk has referred the matter to the court for decision. Although, ordinarily, the Clerk would tax costs first under D.Ct.LCvR 54.1(d), and the court would then review the taxed

costs on a motion to retax costs under D.Ct.LCvR 54.1(e), nothing precludes the court from examining the issues first.  The court recognizes, however, that Alberts might want to challenge some of the court's conclusions that are based on the response the defendants filed to Alberts' objections, and that the defendants might want to seek to provide documentation that was not provided.  Accordingly, I will direct the Clerk to tax the costs that I believe are allowable based on the record at this juncture, and the arguments so far advanced.  Either party can then file a timely motion to retax costs, if it sees fit.[1]

I

## DENIAL OF TAXABLE COSTS IS UNWARRANTED

As Alberts notes, courts are permitted to decline to tax costs requested even if they squarely fall within the list set forth in Rule 54(d).  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987) ("It is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party.").  The defendants emphasize that LCvR

---

[1]  LBR 7054-1 has been amended, effective July 1, 2011, to no longer provide that D.Ct.LCvR 54.1 applies.  Instead, the court merely looks to Fed. R. Civil P. 54(d).  The bill of costs, however, was submitted before that amendment, and thus the court will apply D.Ct.LCvR 54.1, and it adopts Rule 54(d)'s seven-day deadline for filing a motion to retax costs and will set 14 days after service of the motion to tax costs as the deadline for filing a cross-motion to retax costs.

2

54.1 uses mandatory not discretionary language. "Costs *shall* be taxed as provided in Rule 54(d), Federal Rules of Civil Procedure," and "[w]hen requested to do so in the bill of costs, the Clerk *shall* tax the following costs." LCvR 54.1(a), (d) (emphasis added.) D.Ct.LCvR 54.1(d) places a mandatory obligation on the Clerk to tax costs, but does not purport to restrict the court's discretion to deny costs, and, indeed, D.Ct.LCvR 54.1(e) provides that after the Clerk taxes costs, the court "for good cause shown may tax additional costs or may deny costs allowed by the Clerk pursuant to Section (d)." In making it mandatory to follow Rule 54(d) with respect to the taxing of costs, D.Ct.LCvR 54.1(a) obviously does not displace the language in Rule 54(d) permitting the court to decline to award costs.

Nevertheless, as observed in *Johnson v. Holway*, 522 F. Supp. 2d 12, 16 (D.D.C. 2007):

> Rule 54(d) embodies a strong presumption that the prevailing party "is normally entitled to costs in the district court as a matter of course...." *Baez v. U.S. Dep't of Justice*, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc); *Sun Ship, Inc. v. Lehman*, 655 F.2d 1311, 1317 (D.C. Cir. 1981). The Rule, as noted, "generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party," *Crawford Fitting Co.*, 482 U.S. at 442, 107 S.Ct. 2494; however, the Court "may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *Baez*, 684 F.2d at 1004. As the D.C. Circuit has observed, "[t]he result is that trial judges have rarely denied costs to a prevailing party whose conduct has not been vexatious when the losing party has been capable of paying such costs." *Id.*

Unless the defendants have been vexatious in incurring costs, for

3

example, by having engaged in misconduct that rendered the
litigation unnecessarily prolix and expensive (*see Sun Ship, Inc.
v. Lehman*, 655 F.2d 1311, 1318 (D.C. Cir. 1981)), the court will
not deny the defendants' taxable costs.  No such vexatious
conduct has been shown here, and, accordingly, taxable costs will
not be denied.

## II

### FEES OF EXPERTS

Alberts opposes the payment of any costs associated with the
testimony of Mathew Kimmel, the defendants' real estate valuation
expert, pointing to criticisms this court made of Kimmel's expert
testimony.  The court, however, credited Kimmel's expert
testimony in some instances, and even as to the parts of his
opinions with which the court disagreed, there has been no
showing of bad faith on the defendants' part in introducing those
opinions into evidence.  Accordingly, that objection is
overruled.

Similarly, Alberts contends that no costs should be awarded
concerning James Yerges' expert testimony unless and until the
Court considers the issue of solvency – the only issue upon which
Yerges testified – and then only if the testimony is deemed to
have provided benefit.  The issue of insolvency was an element of
Alberts' claims, and the defendants were entitled to present
Yerges' expert testimony regarding insolvency even if the court

4

was able to decide Alberts' claims without reaching the issue of insolvency. Alberts has not shown that Yerges' testimony was devoid of any substance whatsoever such as to constitute the incurring of the cost of his expert testimony in a vexatious fashion. Indeed, in performing its valuation under the income approach, the court credited parts of Yerges' testimony in addressing how long it would take a hypothetical purchaser to turn around Michael Reese Hospital. Alberts' objection in this regard is overruled.

III

TRAVEL COSTS OF JAMES YERGES

Alberts also contends that the court should deny all costs associated with Yerges' second trip to Washington, D.C. Yerges testified on February 14 and 15, 2007, left trial to take vacation, and then was recalled to testify on February 27 and 28, 2007. Alberts, however, acquiesced in Yerges' being allowed to keep his vacation plans intact.[2] This objection is overruled.

---

[2] Yerges offered to change his vacation plans, but this offer was rejected by Alberts' counsel. See Trial Tr., Feb. 15, 2007, at 3158:8-12 (Defendants' counsel explaining that Yerges "has agreed to alter his family plans ... in order to allow the cross to be finished today and into tomorrow afternoon."); id. at 3160:15-17 (Albert's counsel stating that "if direct of Mr. Yerges can be completed within the hour, he can leave, go on his vacation and then come back at the end of their case"); id. at 3219:8-9 (agreeing not to cross-examine Yerges immediately upon the completion of his direct testimony); id. at 3219:15 (stating "we are allowing Mr. Yerges to leave").

IV

TRAVEL AND SUBSISTENCE COSTS OF THREE OTHER WITNESSES

Alberts also objects to the travel and subsistence costs being claimed with respect to two experts, Kevin Moss and Matthew Kimmel, and the travel costs of a representative of the defendants, Gregg Gerken.

As to Moss and Kimmel, the defendants originally sought $10,510 in travel costs but now seek only $4,055.00 in such travel and subsistence costs, and have done an itemization showing that, using per diem rates that place a cap on witness subsistence under 28 U.S.C. § 1821(d), $4,415.00 in costs were incurred.  The $360 difference between the itemized amount of $4,415 and the $4,055 sought is probably based on the requirement of proof "that the costs were actually incurred."  *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 969 (N.D. Ill. 2010).  As to their witnesses, the defendants are only out of pocket the amounts that the witnesses billed them, and under 28 U.S.C. § 1821(d) "the amount taxable is the amount actually paid or the statutorily-defined amount, whichever is less." *Independence Tube Corp. v. Copperweld Corp.*, 543 F. Supp. 706, 721 (N.D. Ill. 1982).  *Accord*, *Trading Techs.*, 750 F. Supp. 2d at

971.[3]  The $4,415 itemized amount consists of:

**Matthew Kimmel:**

| | |
|---|---:|
| Airfare (2/14 and 2/20 two roundtrip flights from Chicago) | $1,341.00 |
| Tolls, Mileage, Parking, and Taxi | $265.00 |
| Lodging per diem (3 days x $188.00) | $564.00 |
| Meals per diem (3 x $64.00) | $192.00 |
| Meal per diem, first day (2 x $48.00) | $96.00 |
| Witness fees (5 x $40.00) | $200.00 |

**Kevin Moss:**

| | |
|---|---:|
| Airfare (2/19 roundtrip from Atlanta) | $693.00 |
| Taxi | $100.00 |
| Lodging per diem (3 days x $188.00/day) | $564.00 |
| Meals per diem (3 days x $64.00/day) | $192.00 |
| Meal, first-day (1 day x $48.00/first day) | $48.00 |
| Witness fees ( 4 x $40.00) | $160.00 |
| **Matthew Kimmel and Kevin Moss (combined)** | **$4,415.00** |

Alberts has not had an opportunity to object to the revised

travel and subsistence costs sought as to these two witnesses.

_____

[3]  The defendants are seeking only $4,055 instead of the
itemized $4,415 for these two witnesses, a difference of $360.
This may be because they have not included $355 (rounded to $360)
of per diem amounts that exceeded actual costs incurred:

- Kimmel's hotel charge was $434, not $564, a difference of $130.
- His meal costs were only $151, not $288 (the sum of $192 plus $96), a difference of $137.
- Moss's meals were $152, not $240 (the sum of $192 and $48), a difference of $88.

Together those three differences total as follows:

| | |
|---|---|
| | $130 |
| | $137 |
| | $ 88 |
| TOTAL: | $355 |

Alberts will be allowed to seek a retaxing of these costs.[4]

Alberts also objects to $344.40 in airfare sought as a travel cost incurred with respect to Gregg Gerken. Objn. at ¶ 18. The bill of costs attached two flight receipts. Bill of Costs, Ex. No. 59. The first receipt is in the amount of $654.18 for a roundtrip flight from Nashville, TN to Reagan National Airport (D.C.), with the flight from Reagan to Nashville scheduled for February 14, 2007 at 7:00 p.m. The second receipt is in the amount of $344.40 for a flight from Reagan to Nashville also scheduled for February 14, 2007, but at 7:30 p.m. Alberts objects that "[i]t is not possible for Gerken to have been on both of these flights." Objn. at ¶ 18. The defendants respond that the extra $344.40 in airfare arose because Mr. Gerken had to change his return flight to Nashville due to the length of cross

---

[4]  Even though actual airfare receipts were not submitted, the average airfares sought appear to be in the ballpark of what would have been incurred. In regard to his objection that actual receipts were required, Alberts may wish to address this observation in *Trepel v. Roadway Express, Inc.*, 266 F.3d 418, 425 (6th Cir. 2001):

> Actual receipts are not required by statute or case law. 28 U.S.C. § 1821(c)(1), which discusses the payment of a witness' expenses for travel on a common carrier, specifically states that "[a] receipt *or other evidence* of actual cost shall be furnished." 28 U.S.C. § 1821(c)(1) (1994) (emphasis added). Accordingly, federal courts have not required prevailing parties to present actual receipts and have allowed them to include affidavits instead. *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 65 (5th Cir. 1994).

8

examination and re-cross examination by Alberts' counsel, and this explanation seems reasonable. *See Powell v. The Home Depot, U.S.A., Inc.*, 2010 WL 4116488, at *14 (S.D. Fla. Sept. 14, 2010) (magistrate's report), *adopted*, 2010 WL 4102933 (S.D. Fla. 2010). Alberts, however, has not been given an opportunity to reply to that explanation, and will be allowed to seek a retaxing of the costs.

V

DEPOSITION COSTS

Alberts objects to certain costs associated with depositions.

A.   <u>Charges for Transcripts Other than Final Paper Transcript at Non-Expedited Rate</u>.   Alberts objects that charges for expedited transcripts, for "Transcript - Rough ACII," and for "Rough Draft" ought to be disallowed. *See OAO Alfa Bank v. Ctr. for Pub. Integrity*, 2006 WL 1313309, at *4 (D.D.C. May 12, 2006) ("The parties do not address whether court reporter fees for features requested for the convenience of counsel – minuscript, ASCII copies, indices, and diskettes, for example – are recoverable.  There is a broad consensus that they are not." (citations omitted)). *See also Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 980-81 (N.D. Ill. 2003).

Charges for expedited transcripts ordinarily ought to be disallowed as costs to the extent that they exceed the court

9

reporter's standard rate.  Similarly, the cost of obtaining a
rough draft transcript of a deposition as a form of expedited
transcript ordinarily ought to be disallowed.  In response, the
defendants cite one decision that might bear on this issue,
*Cleveland Area Board of Realtors v. City of Euclid*, 965 F. Supp.
1017, 1025 (N.D. Ohio 1997) (permitting recovery of costs
associated with expedited transcripts).  Unless there was a
necessity for ordering expedited transcripts, the cost is limited
to the court reporter's regular rate.  *See Sun Ship, Inc. v.
Lehman*, 655 F.2d at 1318 & n.48 (overnight transcription of
depositions disallowed when purely for convenience of counsel);
*Bell v. Gonzales*, 2006 WL 6000485, at *2 (D.D.C. Sept. 27,
2006).[5]  No such necessity has been shown.[6]  A mere desire to

---

[5]  *See also Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d
445, 457 (7th Cir. 1998) (when deposition was taken early in the
litigation, cost of an expedited transcript ordered much later in
case was not an allowable cost); *Fogleman v. ARAMCO*, 920 F.2d
278, 286 (5th Cir. 1991); *United States ex rel. Davis v. U.S.
Training Center, Inc.*, --- F. Supp. 2d ----, 2011 WL 6317336, at
*5 (E.D. Va. Dec. 8, 2011); *Responsible Me, Inc. v. Evenflo Co.,
Inc.*, 2009 WL 528247, at *8 (S.D. Fla. Mar. 2, 2009).

[6]  If the defendants made a showing of necessity, I would
rule differently.  Alberts points to LCvR 54.1(d)(6) which
provides that the *Clerk* may tax "the costs, at the reporter's
standard rate, of the original and one copy of any deposition
noticed by the prevailing party, and of one copy of any
deposition noticed by any other party, if the deposition was used
on the record, at a hearing or trial," and argues that this bars
taxation of rough drafts of deposition transcripts obtained on an
expedited basis.  LCvR 54.1(d)(6) does not bar the *court*,
pursuant to LCvR 54.1(a) and Fed. R. Civ. P. 54(d), from taxing
expedited transcript costs when a showing of necessity has been
made.

have the actual wording of a deposition when that is unnecessary is not sufficient to warrant awarding the cost of an expedited transcript. *See Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 193 F.R.D. 26, 34 (D.P.R. 2000) (the additional costs for an expedited trial transcript should not be permitted where a party "had ample representation during trial, and their attorneys could have taken day-to-day notes on the proceedings").

Here, the invoice for Kevin Moss's October 6, 2006 deposition (Bill of Costs Ex. 21) shows it was billed at an expedited rate coming to $4.25 per page versus the $2.25 per page, $2.00 less, that the same reporting firm charged on invoices (Bill of Costs Exs. 22 and 23) for depositions conducted on September 29, 2006, and October 23, 2006. For the 340 pages, that $2.00 per page differential results in $680 of the charges not being allowable. Similarly, Bill of Costs Ex. 24 includes a differential of $608 for the expedited transcripts of depositions conducted on October 4, 2006 (versus the lower amount that would be charged at $2.25 per page for regular transcripts), resulting

in an additional $608 that must be disallowed.[7]

Similarly, $7,863.50 in charges for rough drafts of deposition transcripts (detailed in the attached spreadsheet) ought to be disallowed.

In addition to the items identified by Alberts, there are $70.00 in charges (see Bill of Costs Exhibit 20) for condensed transcripts which also ought not be allowed. *See Ferguson v. Bombardier Servs. Corp.*, 2007 WL 601921, *4 (M.D. Fla. Feb. 21, 2007) (the "fees for . . . expedited or condensed transcripts, and copies, . . . are not reimbursable under § 1920.").

Alberts objects to the cost billed for James Yerges' deposition of October 2, 2006, for which no invoice was supplied. The defendants have now supplied an invoice. That invoice, however, reflects that the transcript was an expedited transcript

---

[7] The same reporting firm generally charged $2.95 per page for non-expedited depositions taken in July 2006. (Bill of Costs Exs. 10-13.) It may be that the firm farms out depositions to court reporters at the locale where the deposition is conducted, and that the individual court reporters charge different rates. The bill of costs fails to include any invoices showing what the two court reporters who took the depositions on October 4 and 6, 2006, charged for non-expedited transcripts. Because the defendants bear the burden of proof, I have used the $2.25 per page non-expedited rate that the court reporting firm charged for other depositions (taken by other court reporters) on September 29 and October 23, 2006.

at $6.50 per page.[8]  For other depositions taken in October 2006,
the reporting firm's regular transcript charge was $2.25 per page
(see Bill of Costs Exs. 22 and 23).  Accordingly, $1,878.50 of
the expedited transcript charge for 442 pages must be disallowed.
The invoice also includes a $591.00 charge for a rough draft,
which must also be disallowed.

B.  <u>Charges for Delivery and Handling</u>.  Alberts is correct
that the charges for "Binding & Delivery" (for which there is no
breakdown between binding versus delivery),[9] "Shipping &
Handling," "Overnight Messaging," and "Overnight Delivery" ought
to be disallowed.  *See Johnson v. Holway*, 522 F. Supp. 2d at 19
(discussing deposition transcript costs, the court stated that
"[a]dministrative fees, like delivery costs, are considered
ordinary business expenses that cannot be recovered as costs."
(internal quotation omitted)); *Harkins v. Riverboat Servs., Inc.*,
286 F. Supp. 2d at 980-81.  For the invoices that are Bill of
Costs Exs. 1 through 24, $480.00 was for shipping, and will be

---

[8]  On another invoice, Bill of Costs Ex. 24, the court
reporter ("MMREMM") charged an expedited transcript rate of only
$4.25 per page for a deposition taken two days later on October
4, 2006, but that discrepancy in expedited rates is of no moment
because justification for an expedited transcript has not been
provided.

[9]  The defendants assert that costs for binding are
allowable, citing *First City Securities, Inc. v. Shaltiel*, No. 92
C 2620, 1993 WL 408370, at *2 (N.D. Ill. Oct.8, 1993) (permitting
recovery of costs for binding).  Without a breakdown between
binding versus delivery, they have not shown what was the amount
of the cost of binding.

disallowed.  (See the attached spreadsheet.)  Similarly, $25 must
be disallowed for the shipping cost charged for Yerges'
deposition (invoice submitted with response to the objection to
the bill of costs).

C.  <u>Attendance Fee</u>.  Attendance fees of a court reporter
generally are allowable as a taxable cost under 28 U.S.C.
§ 1920(2) to the extent a reasonable cost of the deposition
transcript necessarily obtained.  *Extra Equipamentos E Exportacao
Ltda. v. Case Corp.*, 541 F.3d 719, 727 (7th Cir. 2008) ("Since
the reporter cannot make the transcript without attending the
hearing, the separate attendance fee is properly regarded as a
component of the fee for the transcript." (citations omitted)).
It was only Henderson Legal Services, Inc., a Washington, D.C.
firm, that made charges for "Attendance Fee (appearance)."  It
did so only for depositions it recorded outside of Washington,
D.C. (*e.g.*, in Chicago, Phoenix, and New York), charging the
defendants a fee entitled "Attendance Fee (appearance)" for which
the "Unit" of billing was "Hour" but without consistency in the
billing "Price."  Its invoices (exhibits to the bill of costs)
list the following charges for "Attendance Fee (appearance)":

14

| Exhibit No. | Unit | Qty | Hourly Price | Total |
|---|---|---|---|---|
| 2 | Hour | 1.00 | $190.00 | $190.00 |
| 3 | Hour | 9.00 | $40.00 | $360.00 |
| 5 | Hour | 1.00 | $200.00 | $200.00 |
| 6 | Hour | 6.50 | $40.00 | $260.00 |
| 8 | Hour | 2.00 | $40.00 | $80.00 |
| 9 | Hour | 1.00 | $150.00 | $150.00 |
| 14 | Hour | 1.00 | $120.00 | $120.00 |
| 17 | Hour | 7.00 | $47.50 | $332.50 |
| TOTALS | | 28.50 | | $1,692.50 |

The last of those invoices, Exhibit No. 17, was for the last deposition taken by Henderson Legal Services, Inc., and I will assume that the $47.50 hourly rate included a change, for normal billing rates, from the more common price of $40.00 per hour. Rates of $120.00, $150.00, $190.00, and $200.00 per hour[10] charged for some of the depositions are inconsistent with the rate of $40.00 (and, later, $47.50) per hour, and no explanation has been furnished for allowing those high rates. It makes no sense that two hours of attendance were billed at $80.00 but one hour of attendance (a lesser amount of time) was billed at anywhere from $120 to $200. Of the 28.5 hours charged for "Attendance Fee (appearance)," I will allow 21.5 hours at $40 per hour (a subtotal of $860.00) and seven hours, for the last deposition, at $47.50 hour (as reflective, presumably, of an increased billing rate) (for a subtotal of $332.50), or a total

---

[10] It is of course possible that the invoices charged an appropriate total attendance fee but contained errors in the quantity and price. For example, the charge of $200.00 might have been for 5 hours at $40 per hour. But no corrected invoices have been submitted.

of $1,192.50.  The balance of $500.00 will be disallowed, without prejudice to a motion to retax such costs filed within 7 days after the clerk taxes costs pursuant to this decision.

D.  <u>Surcharge (Weekend, night, etc)</u>.  Alberts objects to three charges for "Surcharge (night, weekend, etc)" of $108.00, $120.00, and $24.00 (a total of $252.00).  Alberts does not contend that it was unnecessary to take the three depositions at times that resulted in the surcharge, and presumably agreed to the timing of the depositions.  Like an attendance fee, such a surcharge incurred because of when the parties conducted the depositions, ought to be allowed.  The objection to the surcharge costs is overruled.

VI

OBJECTIONS TO TRIAL PRESENTATION SERVICE COST

On Schedule C to the bill of costs, the defendants bill $20,419.50 as costs representing certain of the charges by TrialGraphix contained in Exhibits 51 through 55.  Specifically, Schedule C seeks:

| Ex. No. | INVOICE NO. | COSTS INCURRED |
|---|---|---|
| 51 | **Invoice #: IDC201994**<br>36x48 Color Chart ½" Mounted & Laminated<br>8 ½ x 11 Color Copy<br>40 x 60 B&W Enlargement ½" Mounted & Laminated<br>36 x 48 B&W Enlargement ½" Mounted & Laminated<br>8 ½ x 11 B&W Copy<br>Light Weight Easel<br>**TOTAL** | $1,560.00<br>300.00<br><br>214.00<br><br>135.50<br>12.00<br>70.00<br>**$2,291.50** |
| 52 | **Invoice #: IDC202106**<br>36x48 Color Chart ½" Mounted & Laminated<br>8 ½ x 11 Color Copy<br>36 x 48 Color Chart Magnetic Mounted & Laminated<br>16 x 20 Color Magnetic Plaque Mounted & Laminated<br>**TOTAL** | $520.00<br>105.00<br><br>405.00<br><br>183.00<br>**$1,213.00** |
| 53 | Invoice #: IDC202113<br>AV Equipment Rental – Courtroom<br>**TOTAL** | $1,935.00<br>**$1,935.00** |
| 54 | Invoice #: IDC202015<br>AV Equipment Rental – Courtroom<br>**TOTAL** | $13,045.00<br>**$13,045.00** |
| 55 | Invoice #: IDC202242<br>AV Equipment Rental – Courtroom<br>**TOTAL** | $1,935.00<br>**$1,935.00** |

Alberts objects to the defendants' claim on Schedule C of the bill of costs.  He states:

> 24.  Plaintiff objects to the costs sought by Defendants for the use of TrialGraphix, the company used by Defendants for high-tech trial presentation services, totaling $18,128 [sic].  *Bill of Costs*, Schedule C, Ex. Nos. 51-55.
> 25. Pursuant to 28 U.S.C. § 1920(4), Defendants are

17

entitled to "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." However, when materials are "simply supplementary to, and cumulative of, testimony that would have been offered at trial; they are, therefore, not *necessary* within the meaning of the statute." *Robertson v. McCloskey*, 121 F.R.D. 131, 133 (D.D.C. 1988) (emphasis in original). Similar to the case at hand, in *McCloskey*, the defendant's bill sought costs related to trial graphics, including enlargements of documents, maps, chronology of events and an organizational chart. *Id.* at 132. The court denied such costs because, although "[t]here is no dispute that defendant's trial graphics were obtained 'for use in the case,'" they were not "***necessarily*** obtained for use in the case." *Id.* at 132-34 (emphasis added). The court stated: "[o]ne precept that has guided courts making that determination is that costs of demonstrative materials which were merely illustrative of expert testimony, other adequate evidence, or argumentative matter are not taxable." *Id.* at 133 (internal quotation omitted); *see also McDowell v. Safeway Stores, Inc.*, 758 F.2d 1293, 1294 (8th Cir. 1985) (in discussing the meaning of "necessarily obtained for use in the case," court stated that materials should not be "obtained primarily for the convenience of parties but were necessary for use in the case").

26.   Further, the party seeking costs under 28 U.S.C. § 1920(4) bears the burden of proving that the materials were "necessarily obtained for use in the case." *McCloskey*, 121 F.R.D. at 133 ("In short, defendant has failed to carry the burden of showing that his trial graphics were 'necessarily obtained' for use in this case . . . ."); *Goodwall Construction Co. v. Beers Construction Co.*, 824 F. Supp. 1044, 1065 (N.D. Ga. 1992) ("Simply making unsubstantiated claims that such documents were necessary is insufficient to permit recovery." (citation omitted)). Defendants have not met their burden. Nor can they. Just as in *McCloskey*, although there is no dispute that TrialGraphix was utilized for use in the case, it was not necessarily for use in our case. TrialGraphix simply enlarged exhibits and electronically demonstrated materials for the convenience of Defendants — which is not taxable. [Footnote: In contrast, Plaintiff, who introduced many more exhibits at trial, used internal White & Case staff to assist in projecting the Trust's exhibits.]

The defendants respond that:

Defendants' visual presentation costs were not merely supplementary or cumulative but instead necessary because all of Defendants' exhibits were projected onto computer screens in front of the witnesses, the parties, the Court, and the Court's clerk. As opposed to incurring costs to make numerous copies of thousands of documents for use at trial, Defendants rented computer equipment that enabled them to project an image of each document onto screens. This equipment also provided Defendants with the ability to quickly and easily search pleadings, exhibits, deposition transcripts, trial transcripts, and expert reports, as well as magnify or highlight portions of these materials. Throughout the trial the parties, the witnesses, and the Court benefited from this technology, which ultimately saved everyone the time, resources, and effort associated with digging through boxes of documents to find particular exhibits, reports, or transcripts. Contrary to Plaintiff's characterization, Defendants did not simply waste money to enlarge existing documents and create chronologies and organizational charts. In fact, Defendants did not create any chronologies, organizational charts, or enlargements of existing documents whatsoever.

As mentioned in the Memorandum in Support Defendants' Bill of Costs, all of Defendants' visual presentation costs were incurred as a result of the Court's pre-trial Order Allowing Use of Equipment at Trial. (See DE 428.) Furthermore, Defendants' approached Plaintiff about sharing this visual presentation technology and its associated cost, but Plaintiff declined this offer. (See Tr. of Hr'g, Jan. 5, 2007, DE 447, at 155.) Finally, it should be noted that five years after Judge Green's opinion in *Robertson*, Chief Judge Lamberth authored the opinion in *Brown v. Pro Football, Inc.*, 839 F.Supp. 905, 917 (D.D.C. 1993), which allowed recovery of almost $20,000 for "litigation graphics" and "litigation supplies," including "charts (blow-ups, flip charts, and page-sized color exhibits)" because they "were necessary to plaintiffs' presentation of their case." *See also Cefalu v. Village of Elk Grove*, 211 F.3d 416, 429 (7th Cir. 2000) (refusing to sustain district court's denial of costs because "we believe that prevailing parties can, under appropriate circumstances, be reimbursed for the cost of computer generated, multi-media presentations even to the degree that such presentations are used not to produce exhibits but rather to display them to the court"); *JT Gibbons, Inc. v. Crawford Fitting Co.*, 750 F.2d 613, 615 (5th Cir. 1985)

(finding that district court did not abuse its discretion
in taxing costs of audiovisual equipment that was
requested before trial and used by both parties);
*Williams v. Board of Commissioners of Mcintosh County*,
938 F.Supp. 852 (S.D.Ga. 1996) (permitting recovery for
the cost of videotaped deposition because the interests
of economy do not outweigh the prevailing party's right
to use videotaped deposition testimony during a bench
trial in order to provide an effective presentation of
the evidence).

The defendants have the better side on this issue. "Fees for
exemplification and the costs of making copies of any materials
where the copies are necessarily obtained for use in the case"
are allowable as costs under 28 U.S.C. § 1920(4). This was a
case in which the volume of trial exhibits was staggeringly
large, and the evidence was of a complexity warranting the use of
equipment to locate and display exhibits promptly during the
course of the long trial. The court's pretrial order
specifically authorized the defendants to "supply and use" a
high-resolution projector, a large projection screen, a digital
visual presenter, two 6-way digital amplifiers, VGA cabling and
wiring, five 17" flat panel monitors, two 4-way switching
devices, an audio system, a wireless microphone system, and two
laptop computers. This permitted the evidence in the complicated
trial to be presented in an expeditious fashion, and the trial
presentation service cost was a cost of copies that were
necessarily obtained for use in the case. *See Cefalu v. Vill. of
Elk Grove*, 211 F.3d 416, 429 (7th Cir. 2000) ("[W]e believe that
prevailing parties can, under appropriate circumstances, be

reimbursed for the cost of computer generated, multi-media presentations even to the degree that such presentations are used not to produce exhibits but rather to display them to the court."); *First Nat'l Bank in Sioux Falls v. First Nat'l Bank South Dakota*, 2010 WL 4363802, at *3 (D.S.D. Oct. 27, 2010) ("[T]he services of the Martin Advantage technology vendors furthered the illustrative purposes of many of the exhibits which were received at trial and that the services constitute exemplification.  Although this was a court trial, not a jury trial, the Court found the technology provided by Martin Advantage helpful in interpreting the evidence in this complex case.  The Court finds the exemplification services and rental equipment expenses were necessarily obtained for use in the case."); *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 2009 WL 2584838, at *10 (N.D. Iowa Aug. 17, 2009).  Alberts' objection is overruled.

VII

CONCLUSION

For the reasons stated above, the defendants' bill of costs is granted in part and denied in part, without prejudice to the parties' filing motions to retax costs.  It is appropriate to award the defendants costs as follows: (1) $16,232.83 for hearing and trial transcripts, (2) $300 for fees and disbursements for printing, (3) $10,047.91 for fees for witnesses, (4) $25,953.60

21

for exemplifications and copies of papers necessarily obtained

for use in this case, and (5) $30,117.50 for deposition costs.[11]

Accordingly, the Clerk of the Court will be directed to tax costs

in favor of defendants and against plaintiff in the amount of

$82,651.84.  A separate order follows.


[Signed and dated above.]

Copies to: All counsel of record.

---

[11] As detailed in the attached spreadsheet, the court
disallows deposition costs in the amount of $12,696.00 ($680 +
$608 + $7,863.50 + $70 + $1,878.50 + $591 + $480 + $25 + $500).

**Disallowed Deposition Costs Asserted in Defendants' Bill of Costs**

| Bill of Costs Ex. | Rough Drafts | Excess for Expedited | Shipping | Mini | Attendance Fees |
|---|---|---|---|---|---|
| 1 | $423.00 | | $25.00 | | |
| 2 | $336.00 | | $25.00 | | $150.00 |
| 3 | $518.75 | | $25.00 | | |
| 4 | $454.50 | | $25.00 | | |
| 5 | $618.75 | | | | $160.00 |
| 6 | $366.25 | | $25.00 | | |
| 7 | $715.50 | | $50.00 | | |
| 8 | $82.50 | | $25.00 | | |
| 9 | $298.35 | | $25.00 | | $110.00 |
| 10 | $438.75 | | $25.00 | | |
| 11 | $427.50 | | | | |
| 12 | $492.75 | | | | |
| 13 | | | $15.00 | | |
| 14 | $248.00 | | $25.00 | | $80.00 |
| 15 | $535.50 | | $25.00 | | |
| 16 | $193.50 | | $25.00 | | |
| 17 | $462.40 | | $25.00 | | |
| 18 | | | | | |
| 19 | | | $25.00 | | |
| 20 | | | $10.00 | $70.00 | |
| 21 | $375.00 | $680.00 | $25.00 | | |
| 22 | $398.75 | | $15.00 | | |
| 23 | $71.25 | | $15.00 | | |
| 24 | $406.50 | $608.00 | $25.00 | | |
| Yerges Dep. | $591.00 | $1,878.50 | $25.00 | | |
| **Totals** | **$8,454.50** | **$3,166.50** | **$505.00** | **$70.00** | **$500.00** |

**Total of Disallowed Deposition Costs**

| | |
|---|---|
| Rough Drafts | $8,454.50 |
| Excess for Expedited | $3,166.50 |
| Shipping | $505.00 |
| Mini | $70.00 |
| Attendance Fees | $500.00 |
| **GRAND TOTAL** | **$12,696.00** |